976 P.2d 1123 (1999)
328 Or. 332
In the Matter of Justin Michael Dreyer, a Child.
STATE of Oregon ex rel. JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, Respondent on Review,
v.
Justin Michael DREYER, Petitioner on Review.
(CA A94748; SC S44602; CC 8807-81985)
Supreme Court of Oregon.
Argued and Submitted September 11, 1998.
Decided March 25, 1999.
*1124 Peter Miller, Portland, argued the cause and filed the brief for petitioner on review.
Rolf C. Moan, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.
Before CARSON, Chief Justice, and GILLETTE, VAN HOOMISSEN, and DURHAM, Justices.[**]
GILLETTE, J.
We are asked in this juvenile court proceeding to determine whether a juvenile court properly may dismiss a delinquency petition after adjudicating the petition and finding the youth to be within the court's jurisdiction, when the petition alleges conduct that, under another statute, cannot be expunged from the youth's juvenile record. The Court of Appeals held that a juvenile court could not do so. State ex rel. Juv. Dept. v. Dreyer, 149 Or.App. 775, 945 P.2d 97 (1997). We conclude that post-adjudication dismissal is permitted under those circumstances and that the Court of Appeals erred in concluding otherwise. Accordingly, we reverse the decision of the Court of Appeals and affirm the juvenile court's order of dismissal.
In 1994, a petition was filed in Multnomah County Juvenile Court alleging that the youth was within the jurisdiction of the court for having committed an act that, if committed by an adult, would constitute sexual abuse in the third degree, ORS 163.415. After a hearing that ended with the youth's admission to the facts alleged in the petition, the court found the youth to be within its jurisdiction. The court placed the youth on formal probation for two years.
*1125 Near the end of the probationary period, the youth moved to dismiss the delinquency petition "in furtherance of justice, and as may most appropriately serve the best interests of the youth and the public." He argued that he had accomplished the goals that the court had set for him when it imposed probation, that he presented a low risk of reoffending, and that nothing would be gained by keeping the adjudication on his record. The county juvenile department opposed the motion, arguing that dismissal would result in expunction of court records of the youth's offense. Such a result, the department argued, would contravene the legislative intent expressed in ORS 419A.260(1)(d)(J) that adjudications like the one at issuefinding that the youth had committed the equivalent of third degree sexual abusenot be expunged.
After a hearing, the court concluded that it had authority to dismiss the petition, that dismissal was in the best interests of the youth and the community, and that, although the effect of dismissal on expunction was "open to debate," it intended its dismissal to "serve[ ] the purpose * * * as if [the petition] had been dismissed prior to the time of trial." Consistent with that conclusion, the court issued an amended order dismissing the petition "with prejudice and with the same effect as if the petition had been dismissed prior to adjudication."
The state, which was the prosecuting party, appealed. It argued that the dismissal was unauthorized, because its ultimate purpose and effectexpunction of the court records of the youth's offenseis prohibited by ORS 419A.260(1)(d)(J). In that regard, the state noted that, under ORS 419A.260(1)(d)(J) (xviii), an adjudication that is based on the juvenile equivalent of third-degree sexual abuse (as was the youth's) cannot be expunged.[1] The state also noted that, in State ex rel. Juv. Dept. v. Alderson, 146 Or.App. 185, 189, 932 P.2d 97 (1997), the Court of Appeals had held that post-adjudication dismissal was unauthorized under such circumstances.
In a per curiam opinion citing Alderson, the Court of Appeals reversed the dismissal and remanded. We understand the reference to Alderson to signal the Court of Appeals' agreement with the state's contention that dismissal was unauthorized, because it was contrary to ORS 419A.260(1)(d)(J). The youth now seeks review of that decision by this court.
The youth argues that juvenile courts have broad authority to fashion alternative dispositions, including authority to dismiss petitions after adjudication, even when the result might be expunction of otherwise nonexpungeable records. The youth further argues that the state's concerns about expunction are premature and never should have entered into the Court of Appeals' calculus. In that regard, the youth asserts that expunction does not follow automatically from dismissal, but can occur only after a separate expunction proceeding under ORS 419A.262. The youth then argues that, until he applies for expunction under that statute, any claim that the dismissal will frustrate the expunction statute is premature.
In response, the state contends that the expunction issue is ripe at this stage, because dismissal will permit the youth to seek expunction and because the trial court clearly had expunction in mind when it issued its order. The state also argues that the juvenile court lacked authority to dismiss the delinquency petition after adjudicating the youth to be within its jurisdiction.
The state's last argument is, in our view, the first that we need to address: If the juvenile court lacked authority to issue any post-adjudication dismissal, then the potential effect of such a dismissal on expunction *1126 is irrelevant. We begin, therefore, with this question: Does a juvenile court have authority to dismiss a delinquency petition after the court has adjudicated it and has found the youth who is its subject to be within the jurisdiction of the court?
The youth contends that juvenile courts do have such authority. He relies primarily on ORS 419C.261(2), which authorizes a juvenile court to
"set aside or dismiss a petition filed under ORS 419C.005 in furtherance of justice after considering the circumstances of the youth and the interests of the state in the adjudication of the petition."
The youth further argues that the existence of such authority is evident from various legislative and judicial statements of policy to the effect that juvenile courts are to be accorded wide latitude in order to achieve what is best for the youth and the community. The youth notes that the Juvenile Code's policy statement provides that the code should be "liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance, treatment and control as will lead to the child's welfare and the protection of the community." ORS 419A.002(2). The youth claims to find the same policy of flexibility in this court's opinions in State ex rel. Juv. Dept. v. Reynolds, 317 Or. 560, 857 P.2d 842 (1993), and State v. McMaster, 259 Or. 291, 486 P.2d 567 (1971).
The state denies that the youth can draw any authority to dismiss after adjudication from either source. With respect to ORS 419C.261(2), the state argues that it is clear that the legislature had only pre-adjudication dismissals in mind. That fact, the state argues, can be gleaned from the requirement that juvenile courts consider "the state's interest in adjudication of the petition"an interest that, according to the state, does not exist after adjudication has occurred. The state also points out that, although earlier versions of the dismissal statute expressly provided for dismissal "at any stage of the proceeding," that clause is absent from the present version.[2] Ultimately, the state concludes, those textual and contextual clues establish that, in enacting the present version of ORS 419C.261(2), the legislature intended to authorize only pre-adjudication dismissals.
The scope of the authority conferred by ORS 419C.261(2) is a matter of statutory construction, to be analyzed according to the framework set out in PGE v. Bureau of Labor and Industries, 317 Or. 606, 859 P.2d 1143 (1993). Under that framework, we begin by examining the text and context of the statute, id. at 610-11, 859 P.2d 1143, including the two items that the state identifies as significant. Although we agree that those items lend some support to the state's suggestion that ORS 419C.261(2) speaks to only pre-adjudication dismissals, that support is not so strong as to be dispositive. What is dispositive is another piece of contextual evidenceORS 419C.005(4)a statute that, in our view, undermines the state's position.
ORS 419C.005(4) appears in the same chapter as ORS 419C.261(2) and provides, in part:
"The court's wardship over a person found to be within the court' jurisdiction under this section or ORS 419C.067 continues, and the person is subject to the court's jurisdiction, until one of the following occurs:
"(a) The court dismisses a petition filed under this chapter or waives the case under ORS 419C.340."
Although ORS 419C.005(4) does not itself grant juvenile courts the authority to dismiss a delinquency petition after adjudication, the statute establishes that the legislature contemplated that petitions might be dismissed at that stage. To the extent that ORS 419C.261(2) is ambiguous with respect to the issue of when the court may dismiss petitions, ORS 419C.005(4) resolves that ambiguity in favor of the youth's position, viz., that dismissal may occur even after the subject of the petition is found to be within the jurisdiction of the court.
*1127 Having concluded that post-adjudication dismissals of delinquency petitions are authorized, we now must consider whether the dismissal in this case was authorized. The state contends that it is not, because the legislature intended to preclude such an order's ultimate effect, i.e., expunction of records of juvenile adjudications that, under ORS 419A.260(1)(d)(J), are nonexpungeable. In that regard, the state places particular emphasis on the fact that the juvenile court dismissed the petition "with the same effect as if [it] had been dismissed prior to adjudication." The state contends that,
"if the dismissal genuinely has the same effect as dismissal `prior to adjudication,' youth can argue that no adjudication ever occurred and that he was not found to have committed the equivalent of third-degree sexual abuse. If that argument is correct, the effect of the dismissal is expunction, and the juvenile court exceeded its authority by issuing the order."
In making that argument, the state appears to assume that the "same effect" wording of the juvenile court's order is an integral part of the order that accurately reflects the order's legal effect. We, however, are not persuaded that that wording achieves that consequence.
Although, initially, the inclusion of that wording shows an intention on the part of the juvenile court to enter an order "nunc pro tunc," the order is notindeed, cannot bean order of that kind. Nunc pro tunc orders are a manifestation of the inherent power of a court to make its record speak the truth, that is, to correct clerical errors at a later time so that the record reflects what actually occurred at an earlier time. See, e.g., Mullinax and Mullinax, 292 Or. 416, 424, 639 P.2d 628 (1982) (describing court's inherent authority to correct clerical errors). The juvenile court's "same effect" wording in the present case does not serve that purpose: Nothing in the record before this court suggests that the juvenile court dismissed the petition before adjudication.
It might be argued that the inclusion of the "same effect" wording evinces an intent on the juvenile court's part to set aside its prior adjudicationa result that is authorized under ORS 419C.610, which grants juvenile courts authority to modify or set aside any order.[3]
However, on its face, the dismissal order does not purport to modify or set aside the prior adjudication finding the youth to be within the court's jurisdiction or, for that matter, any other order in the proceeding. Moreover, the record shows that the juvenile court was satisfied that its decision finding the youth to be within its jurisdiction was correctat least at the time when it was made. Ultimately, then, the order's "same effect" wording must be taken at face valueas conveying the juvenile court's intent that its dismissal of the petition have a retroactive effect that ordinarily it would not have.
However, the juvenile court lacked authority to give its dismissal order such an effect. There is no reason to believe that a juvenile court's authority under ORS 419C.261(2) to set aside or dismiss petitions includes that power. Nor, as we have discussed, can the wording in the order be justified as an exercise of the juvenile court's inherent error-correcting authority. See Gillespie v. Kononen, 310 Or. 272, 276 n. 7, 797 P.2d 361 (1990) (nunc pro tunc order "is effective only when it records a previously omitted truthit does not create, but only speaks what has been done."). Ultimately, then, to the extent that wording in the order purports to give the dismissal retroactive effect, it cannot do so.
That does not mean, however, that the dismissal order is a nullity. The order has significance independent of its "same effect" wording and, to the extent that the part of the order that dismisses the petition is authorized (as it appears to be under ORS 419C.261(2)), it should be given effect.[4]
*1128 Having concluded that the dismissal itself was authorized, but that it does not have retroactive effect, we return to the central issue in this case: Does the dismissal contravene the legislative intent expressed in ORS 419A.260(1)(d)(J)? Put somewhat differently: Does the dismissal in this case have an effect that the legislature intended to preclude?
To the extent that the state's concerns about the dismissal having such an effect arise out of the juvenile court's "same effect" wording, those concerns are resolved by the foregoing discussion. Once that wording is denied a present legal effect, it becomes evident that the state's concern is too attenuated to justify the result reached by the Court of Appeals. For example, as the youth points out, all the youth's juvenile records will remain intact until the youth applies for expunction under ORS 419A.262. Neither is the result of such an application a foregone conclusion: Under the statute, if and when the youth applies for expunction, then the state must be notified of the application and must be given an opportunity to present its arguments against expunction at that time. ORS 419A.262(10), (11), and (12).[5]
We do not deny that the youth may invoke the expunction process and may argue, in the course of that process, that, because the petition underlying his adjudication was dismissed, he has not been "found * * * to be within the jurisdiction of the court" for an act that amounted to third-degree sexual assault. However, the fact that dismissal makes that argument possible in a later proceeding is no reason to disallow the dismissal ab initio. Dismissal, even post-adjudication dismissal, is within a juvenile court's statutory powers. A court's exercise of its power to dismiss should not be set aside in its entirety on the basis of a future effect that the dismissal might or might not haveparticularly when there will be an opportunity for the state to challenge that effect itself in a later proceeding.
The ruling at issue in this case has real and immediate salutary effects for the youth beyond the possibility of invoking expunction in the future. Under those circumstances, it makes sense to allow the dismissal to stand (thereby permitting the youth to enjoy its other benefits) and to require the state to reserve its present argument, unless and until the youth seeks to have his juvenile records expunged.
The decision of the Court of Appeals is reversed. The order of the juvenile court is affirmed.
NOTES
[**] Kulongoski, Leeson, and Riggs, JJ., did not participate in the consideration or decision of this case.
[1] ORS 419A.262 provides for expunction of juvenile court records upon application of the person who is the subject of the record if, after a hearing on the matter, the juvenile court makes certain required findings. ORS 419A.260(1)(d) defines "record" for purposes of ORS 419A.262. ORS 419A.260(1)(d)(J) (xviii) excludes from that term (and, therefore, from the range of materials that may be expunged):

"(J) Any records in cases under ORS 419C.005 in which a juvenile court found a person to be within the jurisdiction of the court based upon the person's commission of an act which if done by an adult would constitute one of the following offenses:
"* * * * *
"(xviii) Sexual abuse in the third degree under ORS 163.415."
[2] Until 1995, the Juvenile Code expressly provided that a juvenile court "may dismiss [a delinquency] petition at any stage of the proceedings." See, e.g., ORS 419.482(5) (1991); Or. Laws 1993, ch. 33, § 196(4).
[3] ORS 419C.610 states:

"Except as provided in ORS 419C.613, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."
[4] Moreover, although the juvenile court may have intended that the dismissal would have the specified effect, there is nothing in the record or the order itself to suggest that the court would have ruled otherwise on the youth's motion if such an effect clearly was precluded.
[5] ORS 419A.262(10) provides that notice of any application for expunction most be given to "the district attorney of the county in which the expunction proceeding is commenced and the district attorney of each county in which the record sought to be expunged is kept. Under ORS 419A.262(11), those district attorneys have 30 days to give written notice of any objections. If such objections are filed, the court cannot enter an expunction order without first holding a hearing on the matter. ORS 419A.262(12)(a).