No. 34 August 15, 2013 1

## IN THE SUPREME COURT OF THE
## STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

NILE TERRENCE STARK,
*Petitioner on Review.*

(CC 08040789; CA A144974; SC S060384)

On review from the Court of Appeals.*

Argued and submitted March 12, 2013.

Andrew D. Robinson, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Gregory A. Rios, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Linder, Landau, and Baldwin, Justices.**

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

\* Appeal from Linn County Circuit Court, John A. McCormick, Judge. 248 Or App 573 (2012).

\*\* Brewer, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

Defendant challenges his conviction for the crime of felon in possession of a firearm, arguing that, when he possessed the firearm in question, he was not a "person who has been convicted of a felony" within the meaning of the felon-in-possession statute, ORS 166.270. Paragraph (3)(a) of that statute provides that a conviction shall not be deemed a felony conviction if, "at the time of judgment," the court declared the conviction to be a misdemeanor. We interpret that paragraph to refer not only to the original judgment of conviction, but also to subsequent judgments of conviction entered prior to an accused's firearm possession. In this case, we conclude that the court had not declared defendant's conviction to be a misdemeanor in the original or a subsequent judgment of conviction by the time that defendant possessed the firearm in question. Accordingly, we reject defendant's claim of error and affirm his conviction on the felon-in-possession charge.

The following undisputed facts appear in the record. In 2004, defendant was convicted in Marion County Circuit Court of felony possession of a controlled substance and was sentenced to 18 months of supervised probation. The judgment of conviction included a handwritten notation: "If defendant successfully completes probation with no violations, [he] may apply to [the] court for misdemeanor treatment."

When defendant completed his probation early in 2006, he moved the Marion County Circuit Court for "an order reducing the charge in the present case from a felony to a misdemeanor." In an affidavit attached to the motion, defendant explained that he was seeking reduction to a misdemeanor because he thought that would give him a better chance of obtaining employment. The state informed the court that it did not object, and the court, "having reviewed the files and records herein and good cause appearing," issued an order on March 29, 2006, reducing defendant's felony conviction to a misdemeanor.

Some years later, in 2008, police discovered a handgun in defendant's possession.[1] Defendant subsequently was charged, this time in Linn County Circuit Court, with being a felon in possession of a firearm, ORS 166.270. Before the matter came to trial, defendant moved in Marion County Circuit Court for a judgment "memorializing" that his 2004 drug conviction had been for a misdemeanor. That court issued a judgment stating that "defendant [was] guilty of a misdemeanor * * * and has been since * * * 2004." Later, the court vacated that judgment and entered a different judgment that was worded in terms of granting defendant's motion to reduce his felony conviction to a misdemeanor. The latter judgment, dated January 5, 2009, purported to be "*nunc pro tunc*" to March 29, 2006, the date of the order reducing the 2004 felony conviction to a misdemeanor.

At trial, defendant moved for a judgment of acquittal on the felon-in-possession charge, arguing that, in light of the January 5, 2009, judgment that purported to retroactively reduce his conviction to a misdemeanor, the state could not establish that, at the time that he possessed the firearm in question, he was a "person who has been convicted of a felony." ORS 166.270(1). Relying on the statutory definition of that phrase at ORS 166.270(3), which excludes circumstances in which "the court declared the conviction to be a misdemeanor at the time of judgment," defendant argued that he was not a "person who has been convicted of a felony" at the time that he was alleged to have possessed the firearm. The trial court disagreed with defendant's interpretation of ORS 166.270(3) and denied his motion for a judgment of acquittal. The felon-in-possession charge went to the jury, which found defendant guilty.

Defendant appealed, arguing, among other things, that the trial court had erred in denying his motion for a judgment of acquittal. The Court of Appeals affirmed. The court concluded that, when ORS 166.270(3)(a) provides that a "conviction shall not be deemed a conviction of a felony if * * * the court declared the conviction to be a misdemeanor

---

[1] The gun was discovered in the course of a search of defendant's car, which occurred when defendant was stopped by police while driving in Linn County. The validity of the search is not an issue before this court.

at the time of judgment," it refers only to declarations made at the time of the *original* judgment of conviction. Thus, the court reasoned, once a judgment is entered convicting a person of a felony, a later order or judgment reducing that conviction to a misdemeanor cannot alter the person's status as a felon for purposes of the felon-in-possession statute. *State v. Stark*, 248 Or App 573, 580, 273 P3d 941 (2012).

Before this court, defendant argues that that interpretation of ORS 166.270(3)(a) is incorrect. He contends that the phrase "at the time of judgment" refers to the judgment in effect at the time that the person charged with the crime possessed the firearm. Employing that construction, defendant contends that his 2004 conviction was *adjudged* to be a misdemeanor conviction on March 29, 2006, before the felon-in-possession issue arose. In that regard, defendant contends that the *order* issued by the Marion County Circuit Court on that date in fact was an erroneously labeled *judgment*, which error the same court corrected, retroactively, in its January 5, 2009, "*nunc pro tunc*" judgment. Thus, this case presents two questions, one pertaining to the proper construction of ORS 166.270(3)(a), and one pertaining to the timing and effect of the March 29, 2006, order and the January 5, 2009, judgment issued by the Marion County Circuit Court. For obvious reasons, the latter question is relevant only if defendant's construction of ORS 166.270(3)(a) is correct.

We approach the first (statutory construction) issue in our usual way, attempting to discern the legislature's intent from statute's text and context and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our starting point is the text of ORS 166.270, which provides, in part:

"(1)   Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm.

"* * * * *

"(3)   For purposes of this section, a person 'has been convicted of a felony' if, at the time of conviction for an offense,

that offense was a felony under the law of the jurisdiction in which it was committed. Such conviction shall not be deemed a conviction of a felony if:

  "(a)  The court declared the conviction to be a misdemeanor *at the time of judgment*[.]"

(Emphasis added.) The parties' disagreement focuses on the emphasized wording, with the state reading the phrase "the time of judgment" to mean the time of *the original* judgment of conviction, and defendant reading it to mean the time of the judgment of conviction in effect when the person is found in possession of a firearm, including a judgment issued *after* the original judgment.

Generally speaking, a "judgment" is "the court's final determination of the rights and obligations of the parties in the case." *Black's Law Dictionary* 918 (9th ed 2009). ORS 18.005(8) defines "judgment," as used in ORS chapter 18, as "the *concluding* decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document."[2] (Emphasis added.) Although each "judgment" that a court issues is, by definition, the "final" or "concluding" determination of the matter decided, the fact is that a court may issue a subsequent "judgment" that supersedes the former—for example, a judgment to correct a prior judgment, ORS 138.083(1), to comply with an appellate court's remand, or to reduce a felony conviction to a misdemeanor conviction after a convicted defendant's successful completion of probation, ORS 161.705(d). Thus, when ORS 166.270(3)(a) refers to "the time of judgment," the question may arise: "Which judgment?"

Defendant argues that, as used in ORS 166.270(3)(a), the term "judgment" denotes the last and, thus, final, judgment that a court has entered at the time of the act that constitutes the other necessary element of the crime of felon-in-possession—possessing a firearm. Defendant contends that, if the legislature had intended to refer to something

---

[2] Although the definition of "judgment" in ORS 18.005(8) by its terms applies to ORS chapter 18, a judgment *document* in a criminal action must comply with ORS 18.038 and meet other statutory requirements. ORS 137.071(2).

other than the judgment in effect at the time of possession, it would have identified the intended time more specifically.

The state counters that, in this statutory context, the word "judgment" in ORS 166.270(3)(a) necessarily refers to the original judgment entered at the time of conviction. The state derives that conclusion from the repeated use of the definite article "the" in the phrase "*the* court declared *the* conviction to be a misdemeanor at *the* time of judgment." (Emphases added.) In the state's view, that phrasing shows that the legislature had in mind a declaration by a *particular* court at *a particular* time, and not *any* judgment that a court might later enter. The state further argues that, because the introductory wording that precedes ORS 166.270(3)(a) refers to "the time of conviction for an offense," it is reasonable to assume that the legislature had that same time in mind when it referred in paragraph (3)(a) to "the time of judgment."

The state is correct that ORS 166.320(3) includes the phrase "at the time of conviction": It provides that a person "has been convicted of a felony if, *at the time of conviction* for an offense, that offense was a felony under the law of the jurisdiction in which it was committed." (Emphasis added.) Paragraph (3)(a) then provides that a conviction *shall not be* deemed a felony conviction if the court declared the person's conviction to be a misdemeanor "at the time of judgment." As we see it, the "time of conviction" phrase in subsection (3) only relates to the condition necessary to make a conviction a felony conviction (the offense must be a felony under the law of the jurisdiction in which it was committed at the time it was committed) and not to the exemption in paragraph (3)(a) for a felony conviction that a court has declared to be a misdemeanor. In fact, the legislature's use of entirely different time references in those provisions may indicate that the legislature did *not* equate "the time of conviction" with "the time of judgment."

Thus, although we agree with the state that the phrasing of ORS 166.270(3)(a) suggests an intent to refer to a

particular time, we do not think that the legislature intended to require that a court's declaration occur only "at the time of conviction." So understood, the legislature's phrasing is not contrary to defendant's proposed interpretation. Under defendant's interpretation, a court may make the necessary declaration not only when the court first enters a judgment of conviction, but also when the court enters a subsequent judgment categorizing the conviction as a misdemeanor. In either circumstance, *the* court declares *the* conviction to be a misdemeanor at *the* time of judgment.

Defendant's interpretation becomes even more compelling, and the state's less so, when considered in the context of other statutes that were in effect at the time that ORS 166.270(3)(a) was enacted.[3] Two of those statutes are particularly relevant—ORS 161.585 (1987)[4] and ORS 161.705

---

[3] ORS 166.270(3)(a) was enacted, in its present form, in 1989. Or Laws 1989, ch 839, § 4.

[4] ORS 161.585 (1987) provided:

"(1) When a crime punishable as a felony is also punishable by imprisonment for a maximum term of one year or by a fine, the crime shall be classed as a misdemeanor if the court imposes a punishment other than imprisonment under ORS 137.124(1).

"(2) Notwithstanding the provisions of ORS 161.525, upon conviction of a crime punishable as described in subsection (1) of this section, the crime is a felony for all purposes until one of the following events occurs, after which occurrence the crime is a misdemeanor for all purposes:

"(a) Without granting probation, the court imposes a sentence of imprisonment other than to the legal and physical custody of the Department of Corrections.

"(b) Without granting probation, the court imposes a fine.

"(c) Upon revocation of probation, the court imposes a sentence of imprisonment other than to the legal and physical custody of the Department of Corrections.

"(d) Upon revocation of probation, the court imposes a fine.

"(e) The Court declares the offense to be a misdemeanor, either at the time of granting probation, upon suspension of imposition of sentence, or on application of defendant or the probation officer of the defendant thereafter.

"(f) The court grants probation to the defendant without imposition of sentence upon conviction and defendant is thereafter discharged without sentence.

"(g) Without granting probation and without imposing sentence, the court declares the offense to be a misdemeanor and discharges the defendant."

ORS 161.585 (1987) was amended by the same legislature that enacted the present wording of ORS 166.270(3)(a), to make it applicable "only to persons convicted of a felony committed prior to November 1, 1989." Or Laws 1989, ch 790, § 52. Subsequent legislatures made minor changes that are not relevant to the present issue. Or Laws 1993, ch 14, § 18; Or Laws 2005, ch 264, § 15.

(1987).[5] Under both of those statutes, certain crimes that otherwise would be classified as felonies could, under described circumstances, be classified as misdemeanors. ORS 161.585 (1987) generally addressed the effect of certain sentencing decisions on the conviction's classification. Paragraphs (2)(a) to (d) and (f) of that statute provided that a felony conviction could be reduced to a misdemeanor conviction at the time of, and by virtue of, sentencing decisions and subsequent events that effectively precluded imprisonment in a Department of Corrections facility. Those paragraphs did not require a particular decision by the court that the offense should be treated as a misdemeanor; rather, the reduction occurred by operation of law. In contrast, ORS 161.585(2)(e) and (g) (1987) provided that a court could decide to reduce a felony conviction to a misdemeanor conviction by imposing no sentence or a sentence other than imprisonment and then expressly "declar[ing]" the conviction to be a misdemeanor. At least one of those provisions—paragraph (2)(e)—contemplated that the court could make such a declaration *after* the original judgment of conviction and sentence.

ORS 161.705 (1987) also gave (and continues to give) a trial court authority to reduce a felony conviction to a misdemeanor conviction, but did so by authorizing the court

---

[5] ORS 161.705 (1987) provided:

"(1) Notwithstanding ORS 161.525, the court may enter judgment of conviction for a Class A misdemeanor and make disposition accordingly when:

"(a) A person is convicted of any Class C felony; or

"(b) A person is convicted of a Class B felony pursuant to ORS 475.992(2)(a); or

"(c) A person is convicted of the Class B felony of possession of marijuana pursuant to ORS 475.992(2)(4)(a); or

"(d) A person convicted of any of the felonies described in paragraph (a) to (c) of this subsection, or of a Class A felony pursuant to ORS 166.720, has successfully completed a sentence of probation; and

"(e) The court, considering the nature and circumstances of the crime and the history and character of the defendant, believes that it would be unduly harsh to sentence the defendant for a felony.

"(f) This section does not apply, however, in cases subject to ORS 475.995."

ORS 161.705 has since been amended (1) to remove the exception set out in paragraph (f) above, Or Laws 2005, ch 708, § 48; and (2) to clarify that the additional requirement set out at paragraph (e), that is, the requirement that the court believe that it would be unduly harsh to sentence the defendant for a felony, applies to each of the four preceding paragraphs, Or Laws 2009, ch 610, § 2.

to "enter a judgment" altering the classification of a defendant's offense: Such reduction could occur only if the trial court, considering the circumstances, thought "that it would be unduly harsh to sentence the defendant for a felony." ORS 161.705(1)(e) (1987).

Those statutes demonstrate that, before 1989 when the current version of ORS 166.270(3)(a) was enacted, a judgment convicting a defendant of a felony and imposing a sentence of probation could be superseded, in certain circumstances, by a later declaration or judgment entered after the sentence of probation was completed, changing the conviction to a misdemeanor. The 1989 legislative assembly that enacted the present version of ORS 166.270(3) presumably was aware of those statutes and the possibility that a subsequent judgment could reduce what originally had been adjudged a felony conviction to a misdemeanor conviction. *See State v. Reams*, 292 Or 1, 8, 636 P2d 913 (1981) (court assumes that the legislature, at time of adoption of new criminal code, was aware of existing law in Oregon on subject); *State v. Waterhouse*, 209 Or 424, 436, 307 P2d 327 (1957) ("Knowledge on the part of the legislature of * * * earlier enactments is presumed"). *Cf. State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984) (legislature is presumed to be aware of the Supreme Court's decisions). Insofar as the unmodified term "judgment" can pertain to both original and subsequent judgments, it would seem that, if the 1989 legislative assembly had intended to make only the original felony judgment, and not the subsequent misdemeanor judgment, relevant to a determination of a person's status as a felon for purposes of that statute, it would have signaled that intent instead of using the more general term "judgment."[6] The legislature's omission of any such signal, in that statutory context, suggests that the legislature did not intend that the term "judgment" mean only the original judgment.[7]

---

[6] We note, in that regard, that when courts refer to judgments other than the most recent and, thus, most final judgment, they tend to use more specific terms, such as "original judgment." *See, e.g.*, *State v. Ainsworth*, 346 Or 524, 526, 213 P3d 1225 (2009) (referring to "original judgment"); *State v. Estey*, 247 Or App 25, 27, 268 P3d 772 (2011) (same).

[7] The 1989 legislative assembly that enacted the current wording of ORS 166.270(3)(a) also presumably would have been aware that any judgment of

The state identifies another statute, ORS 166.274, as relevant context for interpreting the phrase "the time of judgment" in ORS 177.270(3)(a). That statute provides that a person who is barred from possessing a firearm under ORS 166.270 may file a petition for relief from the bar in the circuit court for the person's county of residence, ORS 166.274(1), (2), and may be granted such relief if he or she demonstrates, "by clear and convincing evidence, that the petitioner does not pose a threat to the safety of the public or the petitioner," ORS 166.274(7). The state argues that that provision demonstrates that the legislature intended that convicted felons follow that prescribed procedure to have their gun-possession rights restored and that defendant's expansive reading of ORS 166.270(3)(a) would frustrate that legislative intent by allowing felons to obtain relief simply by requesting misdemeanor treatment.

The state's argument has the tail wagging the dog: It seeks to treat a clearly secondary statute, pertaining to *relief* from the prohibition on felons possessing firearms, as dictating the meaning of the prohibition itself (and the crime that results from its violation). There is no reason to think that the legislature's intent that "any person who has been convicted of a felony" be required to follow the procedure at ORS 166.274 to have their gun-possession rights restored

---

conviction of a felony could be overturned or set aside by a higher court, and that such a court might even enter a judgment reducing the conviction to a misdemeanor. But if the state's interpretation of the wording is taken to its natural conclusion, a subsequent appellate judgment would not be relevant in determining whether a person "has been convicted of a felony" for purposes of ORS 166.270. The state suggests that that would not be so because, if set aside, a felony conviction is treated as void *ab initio*. But this court rejected a similar argument in *Bailey v. Lampert*, 342 Or 321, 153 P3d 95 (2007), when the defendant in that case sought to set aside his felon-in-possession conviction on the ground that*, subsequent* to the felon-in-possession conviction, the underlying felony conviction had been reversed. The defendant argued that, because the underlying felony conviction was void *ab initio*, he had never been a "person who ha[d] been convicted of a felony" within the meaning of ORS 166.270. This court concluded that, in ORS 166.270, "the legislature intended to, and did, focus on a person's status at the time that he or she possessed a firearm," even if that status might later change because the prior felony conviction is reversed or set aside. *Id.* at 327. Although *Bailey* does not address the particular subsection of the statute that is at issue in the present case, it demonstrates that, if the state were correct that the statute refers to only the time of the original judgment, a person whose conviction was later overturned by a court nevertheless would be a person who "has been convicted of a felony:" The person could not claim that the original conviction was void *ab initio*.

had any bearing on its thinking about who would qualify as a "person who has been convicted of a felony." The legislature could have decided that a trial court's reduction of a felony conviction to a misdemeanor should remove that person from the prohibition on firearm possession at ORS 166.270 altogether, and at the same time reasonably could have provided a path for persons who *remain* felons for purposes of the statute to restore their prior right to possess firearms.

Although, at this point, the textual and contextual clues point to the interpretation of ORS 166.270(3)(a) for which defendant contends, we still have not addressed the legislative history that the state has brought to our attention. *Gaines*, 346 Or 171-72. We turn to that legislative history now.

As we briefly noted above, 354 Or at 8 n 3, ORS 166.270(3)(a) was enacted in its current form in 1989. Before then, subsections (1) and (2) of ORS 166.270 were similar to their current versions, but subsection (3) provided:

"For the purposes of this section, a person 'has been convicted of a felony' if, at the time of conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed. *Provided, however, that such conviction shall not be deemed a conviction of a felony if:*

"(a)  *At the time of conviction, and pursuant to the law of the jurisdiction in which the offense occurred, the offense was made a misdemeanor by the type or manner of sentence actually imposed.*"

(Emphasis added.) The original 1989 bill to amend ORS 166.270, HB 3470, would simply have removed all the italicized wording, abolishing the then-existing exception for reductions from felony to misdemeanor status made "by the type or manner of sentence actually imposed." One of the proponents of that change, Sheriff Burks of Lane County, explained to the House Judicial Committee that the change was proposed because members of the law enforcement community were

"concerned about the definition of a felon *** [because] there apparently are certain circumstances when people are

convicted [as] felons but sentenced as * * * misdemeanant[s], and we wanted to eliminate that possibility. If they're convicted of a felony, then they are a felon, that's what we wanted."

Tape Recording, House Judiciary Committee, Natural Resources Subcommittee, HB 3470, May 10, 1989, Tape 23, Side A (statement of Sheriff Burks).

However, as the bill went through the Senate Judiciary Committee, it was modified to provide a new and different exception to the broader definition of a "person [who] has been convicted of a felony"—the one that now appears in paragraph (3)(a) and that is the subject of this review:

"(3)  * * * Such conviction shall not be deemed a conviction of a felony if:

"(a)  The court declared the conviction to be a misdemeanor at the time of judgment[.]"

When the modified wording was introduced to the Senate Judiciary Committee, the committee's legislative counsel, Morris, explained at length that a felony conviction could become a misdemeanor either through the type of sentence imposed or by the trial court declaring the misdemeanor to be a felony, and that, under the then-existing felon-in-possession statute, if a felony conviction became a misdemeanor under either method, then the felon-in-possession statute did not apply. Tape Recording, Senate Judiciary Committee, HB 3470, June 30, 1989, Tape 259, Side A (statement of Counsel Morris). Morris went on to explain how the original bill (which entirely removed the exception he had described) and the amended bill would operate if enacted:

"What the bill as it came to us did would abolish things becoming misdemeanors by operation of law, and, arguably—it's unclear—abolish the * * * effect on the firearms law when the judge declares it a misdemeanor.

"What we've done with the changes from yesterday and today, we've made it so if a [conviction] becomes a misdemeanor by operation of law, you're still in trouble for the gun laws. But we've made it clear, and you'll see the

new language on lines 15 and 26, that if the court feels that special circumstances exist that justify declaring it a misdemeanor, you're in good shape for the gun law."

*Id.* Finally, in response to a question about why the amended bill drew that distinction, Morris stated:

> "We felt that when a felony becomes a misdemeanor by operation of law, that it does not justify getting the person back in good shape for the gun law. But if a judge thinks that circumstances are such that it should be a misdemeanor from jump street, then you should be okay for gun laws. So we basically took the middle ground with the changes that we've made, as opposed to bringing everybody into the [felon] in possession statute as the bill did."

*Id.*

Defendant observes that a persistent theme runs through all the discussions of the existing statute and the proposed changes quoted above: The idea that a felony conviction may become a misdemeanor conviction either by operation of law or by an act of judicial discretion. Defendant contends that it is clear from the quoted history that, when the legislature finally settled on the wording that became the present statute, it intended to draw a line between the two methods, excepting from the prohibition in the statute only those persons whose felony convictions had been reduced to misdemeanors through an act of judicial discretion.

The state argues, however, that one of Morris's last statements to the Senate Judiciary Committee—that a defendant "should be ok for gun laws" if a judge "thinks that circumstances are such that [a felony] should be a misdemeanor *from jump street*"[8]—shows that the exception to the felon-in-possession law that the legislature intended to enact was more narrow: It intended to except only persons whose felony convictions were specifically declared by the court to be misdemeanors *at the outset*. Thus, according to the state, the phrase "the time of judgment" in ORS 166.270(3)(a) must refer to the time of the judgment that was issued when defendant first was convicted and sentenced.

---

[8] According to Richard A. Spears, *Dictionary of American Slang and Colloquial Expressions* (4th ed 2007), "jump street" means "the beginning; the start (of something) *** : *Way back at jump street, I spotted you as a troublemaker.*"

We agree with defendant, however, that the fleeting "jump street" reference in Morris's statement is inadequate support for the state's interpretation of the phrase in ORS 166.270(3)(a). First, there is some possibility that Morris was simply attempting to provide an example of a circumstance in which a judge's decision to reduce a defendant's conviction to a misdemeanor could remove the defendant from the reach of ORS 166.270. In that regard, we note that, although Morris explained that, "if a judge thinks that circumstances are such that it should be a misdemeanor from jump street, then [a person] should be okay for gun law," he did *not* state that a similar determination made in other circumstances should not be treated similarly. Furthermore, in the context of Morris's overall comments, the "jump street" reference is an anomaly. Morris had explained the bill and its antecedents entirely in terms of the distinction between the two ways in which a felony conviction might become a misdemeanor conviction (by operation of law and by judicial declaration), and had never suggested that an additional distinction—based on the timing of a judicial declaration reducing a conviction to misdemeanor status—was relevant.[9] It follows that Morris's comments about the effect of the proposed amendments to ORS 166.270(3), although useful for determining what the legislature intended with respect to Morris's primary point (the distinction between reductions to misdemeanor status occurring by operation of law and by considered judicial declaration), do not reflect the legislature's thinking with respect to the timing of any judicial declaration reducing a felony conviction to a misdemeanor conviction.

---

[9] It is true that, earlier in his comments, Morris had also stated that the "judicial declaration" method of reducing a felony conviction to a misdemeanor conviction occurred "at the time of sentencing." However, the statutes in effect at the time *in fact* clearly contemplated that a felony conviction could be reduced to a misdemeanor by judicial declaration at the time of sentencing *or at a later* time. *See* ORS 161.585(2)(e) (1987) (court could declare an offense to be a misdemeanor at time court grants probation "or thereafter"); ORS 161.705(1)(d) (1987) (court may enter judgment for misdemeanor when person convicted has successfully *completed* sentence of probation, if court believes felony conviction is unduly harsh). We assume that the legislature had a correct understanding of the existing law, and the legislative history does not establish that the legislature relied on Morris's misstatement.

The state argues that Morris's comments are significant for another reason: They show that the legislature considered the wording of the amended bill (which was enacted) to be a "middle ground" between the then-existing exception and the proposal in the original bill to entirely eliminate that exception. The state contends that post-sentencing reductions from felony to misdemeanor status were not an option under the then-existing statutory exception and that, in light of that fact, "neither Morris—nor the legislature—would have understood that option to be part of the compromise."

There are at least two problems with the state's argument. First, it assumes a point that is far from established— that post-conviction reductions were not an option under the law that existed prior to the 1989 amendments. Although the state plausibly interprets the words of the pre-1989 version of ORS 166.270(3) as excepting only reductions to misdemeanor status occurring at the time of an original judgment (because the reduction had to occur "at the time of conviction" through the "sentence actually imposed"), that is not the only reasonable interpretation of that statute, at least when the statute is read in the context of other statutes that were in existence at the time.[10]

Second, although Morris spoke of the amended version of HB 3470 as a "middle ground," he never specifically identified the pre-1989 version of ORS 166.270 as one of the baselines for that assessment. It is conceivable that he was referring to a "middle ground" between Sheriff Burks' position that, "if they are convicted of a felony, then they are a felon" and cannot possess a firearm, and the position that, if a felony conviction is reduced to a misdemeanor—whether by a judge or by operation of law—the person is no longer deemed to be a felon and is permitted to possess a firearm.

---

[10] As we already have noted, 354 Or at 8-10, two statutes then in existence authorized post-sentencing reduction of a felony conviction to misdemeanor status. In the absence of any clear decision to the contrary, it was at least arguable that, in 1989, ORS 166.270(3) (1987) spoke to only reductions that occurred by operation of law as a result of the "sentence actually imposed" and did not pertain to or affect a trial court's separate authority to declare a reduction to misdemeanor status under those statutes. Morris might have been speaking to that possibility when he testified that, if the legislature adopted the amendment as originally proposed, it would only "arguably—it's unclear, abolish the *** effect on the firearms law when the judge declares it a misdemeanor."

The position that the legislature adopted—that only a person whose felony conviction was reduced to a misdemeanor by a judge may possess a firearm—clearly would fall into the middle ground between those two positions.

In summary, Morris's "jump street" and "middle ground" comments do not convince us that the state's interpretation of ORS 166.270(3)(a) is the correct one. The only conclusion that we legitimately can draw from Morris's testimony is that, in enacting the amended version of HB 3470, the legislature recognized that a felony conviction could be reduced to a misdemeanor by operation of law or by a considered judicial declaration, and the legislature intended to except from the operation of the felon-in-possession statute only convictions reduced by the latter method. Thus, the legislative history that the parties have offered is consistent with the conclusion that we have tentatively drawn from the text and context of ORS 166.270(3)(a). The legislature used the general term "judgment" and not a qualified term such as "original judgment." Particularly because the legislature was aware that the law permitted courts to enter subsequent judgments declaring a prior felony conviction to be a misdemeanor, we would have expected the legislature to *explicitly* exclude such judgments from the exception to the felon-in-possession statute if that is what it intended. For all those reasons, we conclude that the phrase "at the time of judgment" in ORS 166.270(3)(a) refers to the time of the judgment of conviction that was in effect at the time of the alleged firearm possession.

Having settled that interpretive issue, we must determine whether defendant was a person who "has been convicted of a felony" at the time that he possessed the firearm in question. Because ORS 166.270(3)(a) provides that a conviction shall not be deemed a felony conviction if, "at the time of judgment," the court declared the conviction to be a misdemeanor, it is clear that the court's declaration must be incorporated into or concurrent with a *judgment* to fall within the scope of the exception. And, because ORS 166.270 is concerned with a person's status as a felon at the time that he or she possessed the firearm, it requires that

the judgment incorporating or concurrent with the declaration be in effect when the person possesses the firearm. *See Bailey v. Lampert*, 342 Or 321, 327, 153 P3d 95 (2007) (judgment setting aside a felony conviction issued *after* time of possession of firearm did not negate defendant's status as a felon at the time he possessed the firearm).

When police found a gun in defendant's car in 2008, the only judgment in the record in the 2004 Marion County case was the original judgment, finding defendant guilty of felony possession of a controlled substance and sentencing defendant to a term of probation. The record also contained an *order*, issued on March 29, 2006, that granted defendant's motion for an order reducing his felony conviction to a misdemeanor. However, at the time that the order was entered, it was not incorporated in or concurrent with a *judgment*.[11] It was not until *after* the gun was discovered and defendant was charged under ORS 166.270 that the Marion County Circuit Court issued, on defendant's motion, a judgment reducing the felony conviction to a misdemeanor. The judgment specified that the reduction was *nunc pro tunc* to the date of the March 29, 2006, order.

Without the *nunc pro tunc* provision, the latter judgment clearly could not advance defendant's effort to place himself within the exception at ORS 166.270(3)(a): ORS 166.270 is concerned with a person's status as a felon at the time he or she possesses a firearm, even if that status might change at some later point. *Bailey*, 342 Or at 327-28. Defendant argues, however, that the *nunc pro tunc* wording made all the difference: It meant that a *judgment* declaring defendant's 2004 felony conviction to be a misdemeanor was in effect in 2008 before he possessed a firearm.

---

[11] Defendant may have thought that the order was sufficient to nullify his felony conviction for purposes of the felon-in-possession statute. But the fact remains that the exception set out in ORS 166.270(3)(a) requires that the declaration reducing a felony conviction to a misdemeanor be made "at the time of *judgment*." Although it may seem unfair, defendant's belief that he was a misdemeanant, not a felon, is irrelevant under ORS 166.270: As this court recently stated in *State v. Rainoldi*, 351 Or 486, 506, 268 P3d 568 (2011), that statute "exhibits a clear legislative intent to dispense with the culpable mental state requirement as to the element that a defendant 'has been convicted of a felony.'"

In that regard, defendant observes that, in its original judgment, the Multnomah County Circuit Court expressly invited defendant to apply for misdemeanant status upon completion of probation and followed through on its offer to reduce the conviction to a misdemeanor in its March 29, 2006, "order." Defendant argues that, given that sequence of events, the court's "order" in fact was a "judgment"—the court's final decision on defendant's status as a felon. Defendant also suggests that ORS 161.705[12] *requires* trial courts to issue any decision reducing a felony conviction to a misdemeanor conviction as a superseding judgment. From that standpoint, defendant argues that, regardless of the facts that he, himself, moved for "an *order* reducing the charge in the present case from a felony to a misdemeanor" and that the trial court captioned its decision on that motion as an "*order*," the decision in fact was a "judgment," and the caption that appeared on the document memorializing that judgment was a mistake. Finally, defendant contends that the circuit court's 2009 entry of a properly captioned judgment reducing defendant's conviction from a felony to a misdemeanor "*nunc pro tunc* March 29, 2006," was a proper exercise of the court's inherent power to "correct clerical errors at a later time so that the record reflects what actually occurred at an earlier time." *State ex rel Juv. Dept. v. Dreyer*, 328 Or 332, 339, 976 P2d 1123 (1999). In other words, defendant argues, the 2009 *nunc pro tunc* judgment establishes that the March 29, 2006, "order" in fact was a judgment declaring defendant's felony conviction to be a misdemeanor.

We have stated that

> "[t]he function of a *nunc pro tunc* entry is to make a record of what was previously done, but not then entered; not to make an order now for then, but to enter now for then an order previously made. *** Such an order is effective only when it records a previously omitted truth—it does not create, but only speaks what has been done."

---

[12] Defendant adverts to the current version of ORS 161.705, which in all relevant respects is identical to the 1987 version of that statute, set out above, 354 Or at 9 n 5.

*Gillespie v. Kononen*, 310 Or 272, 276 n 7, 797 P2d 361 (1990).
Although defendant pays lip service to that rule by describing the 2009 *nunc pro tunc* judgment as correcting a mere labeling error, neither the facts, nor defendant's explanation, supports that description.

Certainly, there is no basis for arguing that the 2006 order comported with the *formal* requirements of a judgment in a criminal action. ORS 137.071(2) requires a judgment document in a criminal action to comply with ORS 18.038 and to provide additional specific information about various aspects of the proceedings and the court's decisions, including a clear specification of the court's disposition for each charge. To comply with ORS 18.038, the judgment document must "be plainly titled as a judgment." ORS 18.038(1). The 2006 order is not so titled. It is titled an "order" and is expressed entirely in terms of granting a motion: "It is hereby ordered that Defendant['s] motion to reduce [his] felony conviction to a misdemeanor is granted." The order also contains none of the additional information required of judgment documents by ORS 137.071(2).

Defendant suggests that such formalities are irrelevant—that the proper focus is on the trial court's *decision* and not the document that memorializes it. He contends that the trial court's *decision* on March 29, 2006, was, in every respect, a judgment that finally disposed of his 2004 conviction, and that the 2009 "*nunc pro tunc*" judgment merely recognizes that "truth" by correcting the original, erroneous documentation of that decision. But defendant does not point to any evidence in the record showing that the court's decision (as opposed to the documentation of the decision) in fact was a judgment.[13] Defendant does not assert, for instance, that he had sought a "judgment" in 2006 or that, due to a clerical error, the word "order" was mistakenly used even though the trial court indicated that

---

[13] We understand the distinction that defendant is attempting to make, but we are not persuaded that it can have any real world significance in this context. By definition, a court's "judgment" is reflected in a "judgment document." *See* ORS 18.005(8) ("'judgment' means the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document"); ORS 137.071(2) (requiring that judgment document in criminal action comply with ORS 18.038). Those statutes would seem to make it difficult, if not impossible, to show that a decision that is not memorialized in a judgment in fact *is* a judgment.

a "judgment" should be entered. Instead, defendant asserts that the decision *should* have been issued as a judgment, because (1) ORS 161.705 provides that, to reduce a conviction to a misdemeanor under paragraph (1)(d) after a defendant successfully completes probation, the court is "required" to enter a superseding judgment; and (2) the decision was the court's final determination resolving the issue of the proper classification of defendant's conviction. But even if those assertions were based on correct statements of the law,[14] they would not assist defendant. That is so because they speak to what defendant *should have* requested and what the court *should have* done, rather than what defendant did in fact request and what the court did in fact do. They do not establish that the 2009 judgment "record[ed] a previously omitted truth," as a *nunc pro tunc* entry must. *Gillespie*, 310 Or at 276 n 7.

We conclude that the *nunc pro tunc* wording in the circuit court's 2009 judgment did not, and could not, transform its prior 2006 order into a judgment. It follows that, when police found a gun in defendant's possession in 2008, the only judgment in effect was the original judgment convicting defendant of a felony. The trial court did not err in denying defendant's motion for a judgment of acquittal, which was based on the theory that defendant was not a felon within the meaning of ORS 166.270(3) at the relevant time.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[14] As we understand them, defendant's assertions are *not* based on correct statements of the law. Insofar as ORS 161.705 provides that a court "*may* enter judgment of conviction for a Class A misdemeanor" in the described circumstances, it clearly does not "require" entry of a judgment. And, whether or not the trial court's decision had the effect of finally disposing of an issue in the criminal action against defendant depends, at least in part, on whether it in fact was a judgment.