# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

COLOMA CHARTER TOWNSHIP,

        Plaintiff/Counter-Defendant-
        Appellant,

v

BERRIEN COUNTY, and BERRIEN COUNTY
SHERIFF'S DEPARTMENT,

        Defendants/Counter-Plaintiffs-
        Appellees,

and

LANDFILL MANAGEMENT COMPANY, INC,
and HENNESSY LAND COMPANY,

        Defendants-Appellees.

FOR PUBLICATION
September 6, 2016
9:00 a.m.

No.   325226
Berrien Circuit Court
LC No.   13-000317-CZ

JOE HERMAN, SUE HERMAN, JAY JOLLAY,
SARAH JOLLAY, JERRY JOLLAY, NEAL
KREITNER, TONY PETERSON, LIZ
PETERSON, RANDY BJORGE, ANNETTE
BJORGE, and TINA BUCK,

        Plaintiffs-Appellants,

v

BERRIEN COUNTY,

        Defendant-Appellee.

No.   325335
Berrien Circuit Court
LC No.   05-003247-CZ

Before:  O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

MURRAY, J.

-1-

These consolidated appeals are from two separate orders that (1) granted summary disposition to defendant Berrien County and (2) modified a permanent injunction. For the reasons set forth below, in both dockets we reverse the trial court's orders to the extent it ruled that the county could operate the shooting range under the authority of the county commissioners act (CCA), and remand for entry of summary disposition in favor of plaintiffs. For these same reasons, we reverse the trial court's modification of the injunction, and vacate and remand on the issue of attorney fees in light of our conclusion that the county acted in violation of *Herman v Berrien Co*, 481 Mich 352; 750 NW2d 570 (2008) and MCL 46.11(b) and (d). We affirm the trial court's ruling on criminal contempt.

These appeals are the continuation of the litigation that resulted in the *Herman* decision. We adopt the statement of facts and procedural history contained in Section I of JUDGE MARKEY'S partial dissent, as well as the statement of the standard of review set forth in Section II A of her opinion. Finally, we also agree with Section III C of her opinion addressing criminal contempt. In light of this, one can see that our disagreement only lies with respect to the trial court's ruling granting summary disposition to the county, as well as the related issues of modifying the permanent injunction and plaintiffs' request for attorney fees. We now turn to those issues.

In *Herman* the Supreme Court held that the CCA, MCL 46.1 *et seq.*, and specifically MCL 46.11(b) and (d), authorizes a county to site county buildings even if inconsistent with local township regulations. The Court also held that because a building cannot function normally without such items as a parking lot, sidewalks, and light posts, those types of ancillary uses are also permitted by statute and therefore also have priority over township zoning provisions.

Despite the fact that the county constructed a new building[1] since issuance of *Herman*, this appeal is still controlled by *Herman*. In general, the *Herman* Court confirmed that since *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702; 664 NW2d 193 (2003), "it has become accepted that the CCA gives counties priority over local regulations that inhibit a county's power to site and erect county buildings under the CCA." *Herman*, 481 Mich at 362. More specific to the siting of county buildings, the Court unequivocally held that the power given to counties is to site buildings, not to allow counties to site land uses or activities:

> The CCA is an unambiguous statute. In pertinent part, it gives counties the power to "[d]etermine the site of, remove, or designate a new site for a county building" and to "[e]rect the necessary buildings for jails, clerks' offices, and other county buildings . . . ." MCL 46.11(b) and (d). A plain reading of this language leads to the conclusion that the Legislature intended to give counties the power to "site" and "erect" "county buildings." Each time the CCA grants the power to site, it invariably relates that power to "buildings." *Notably, the*

---

[1] Although plaintiffs cite several insightful decisions defining what is, or is not, a public building under the governmental tort liability act, MCL 691.1401 et seq., in the absence of a statutory definition, JUDGE MARKEY correctly resorts to a dictionary definition of building.

-2-

*Legislature never semantically links the power to site with any nonbuilding activity or land use. In other words, the CCA does not give counties the power to site a county "activity" or county "land use"; rather, it always relates its grant of siting power to "buildings."* This leads to the conclusion that the siting power is limited to buildings. This conclusion is supported by the contextually derived purpose of the CCA. The CCA was expressly promulgated "to define the powers and duties of the county boards of commissioners . . . ." Title of 1851 PA 156, as amended by 1978 PA 51. Accordingly, in § 11, the act clearly and descriptively articulates the numerous powers it gives to counties. *The power to site county activities or land uses is conspicuously absent from that list.* Also, *the CCA's continued use of the term "building(s)" must have significance. That term would be rendered nugatory if the CCA's power to "site" was meant to extend to other county acts, such as siting land uses, because those other acts are never listed in the CCA.* In essence, if those unlisted acts were actually included in the power to site buildings, then the CCA's express inclusion of the power to site buildings would be superfluous. This cannot be. Therefore, the CCA's continued use of the term "building(s)" must place significant limitations on the meaning of the act's term "site" by omitting the power to do other acts. [*Id*. at 366-368 (emphasis added, footnotes omitted).]

Consequently, the CCA provides the county with no power to site land uses or activities, only county buildings.

The *Herman* Court also acknowledged that "the power to site a building is worthless if the entity that sites the building cannot make normal use of the building." *Id*. at 368. As in *Pittsfield*, the *Herman* Court too recognized that a county could conduct *ancillary* land uses to make normal use of the building:

However, we are mindful that the power to site a building is worthless if the entity that sites the building cannot make normal use of the building. Just as *Pittsfield* recognized that the power to site a building would be "mere surplusage" if the siting entity had to comply with zoning ordinances, *Pittsfield, supra* at 713, we too acknowledge that the power to site a building would be meaningless if the siting entity could not conduct ancillary land uses in order to make normal *use of the building*. For instance, the normal use of most county buildings would require sidewalks, parking lots, and light poles. Thus, while defining the power to "site" as being limited to buildings, we simultaneously accept that some *ancillary* land uses must be included in the county's siting power. [*Id*. (emphasis added).]

Thus, a county can site county buildings pursuant to MCL 46.11(b) and (d), and the *Herman* Court held that "ancillary" land uses fell within that siting power to allow for the normal use of the building. And, of course, the Court held that this shooting range was not an ancillary use of the building containing indoor instructional rooms. *Id*. at 370.

The problem with the building constructed in front of the existing shooting range is that *it* is ancillary to the use of the shooting range, as opposed to the shooting range being ancillary to the normal use of the building. See Random House Webster's College Dictionary (2003)

-3-

("ancillary" is defined as "subordinate" or "subsidiary").  Indeed, the shooting range existed long before the building, and was utilized (until the courts stopped its use) without the existence of the building.  The evidence shows that the shooting range was and is the main feature of this activity, making the building subordinate to, or ancillary to, the shooting range.  The county's argument has the tail (a small structure) wagging the dog (the previously constructed and utilized range).  See *State v Stark*, 354 Or 1, 11; 307 P 3d 418 (2013).  Or, stated differently, the county used an after the fact building in an attempt to statutorily shield its non-conforming land use, something the *Herman* Court stated was impermissible under the CCA.  No matter the intentions of the county in seeking to comply with *Herman*, the facts reveal a belated attempt to protect a land use by siting an adjacent building.  This it cannot do.

There is an additional reason why the county's position cannot prevail.  As we have noted, the *Herman* Court concluded that "Berrien County's outdoor shooting ranges do not have priority over the township ordinances that plaintiffs rely on because they are land uses that are not indispensable to the normal use of the county building."  *Herman*, 481 Mich at 354.  Consequently, the Supreme Court has spoken:  shooting ranges are not a normal or indispensable use of a county building.  This decision makes sense on a number of different levels.  The purpose of the CCA is to allow counties priority over the TZA to build buildings and ancillary items to those buildings such as parking lots, shrubs, and lighting, which are specifically adapted to support the use of the building.  We find no support in the CCA that the Legislature contemplated shooting ranges as normal uses of county buildings.

For these reasons, in both dockets we reverse the trial court's orders to the extent it ruled that the county could operate the shooting range under the authority of the CCA, and remand for entry of summary disposition in favor of plaintiffs.  For these same reasons, we reverse the trial court's modification of the injunction, and vacate and remand on the issue of attorney fees in light of our conclusion that the county acted in violation of *Herman* and MCL 46.11(b) and (d).  We affirm the trial court's ruling on criminal contempt.

As the prevailing party, plaintiffs may tax costs.  MCR 7.219(A).  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Peter D. O'Connell