No. 117          February 20, 2025          29

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

FOUAD MOHIADEEN,
*Petitioner-Respondent,*

*v.*

WASHINGTON COUNTY SHERIFF'S OFFICE,
*Respondent-Appellant.*

Washington County Circuit Court
22CV31426; A180154

Theodore E. Sims, Judge.

Argued and submitted March 6, 2024.

Kimberly A. Stuart argued the cause and filed the briefs for appellant.

Rankin Johnson argued the cause for respondent. Also on the brief was Rankin Johnson Law, LLC.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.*

AOYAGI, P. J.

Reversed and remanded for entry of a judgment affirming the sheriff's denial of petitioner's application.

―――――――――――
* Lagesen, C. J., *vice* Jacquot, J.

## AOYAGI, P. J.

One of the requirements to be eligible for a concealed handgun license in Oregon is that the applicant "[h]as never been convicted of a felony." ORS 166.291(1)(g).[1] An applicant who has been convicted of a felony but had their "record expunged under the laws of this state or equivalent laws of other jurisdictions" is treated the same as someone never convicted of a felony. ORS 166.291(2). In this case, petitioner was convicted of a felony in California. He later took advantage of procedures available to him under California law, pursuant to which his felony conviction was reduced to a misdemeanor conviction, then partially removed from his record. Petitioner now lives in Oregon. When he applied for a concealed handgun license, the Washington County Sheriff denied the application, based on petitioner's prior felony conviction. On judicial review, the trial court concluded that petitioner's felony record had been expunged under California laws equivalent to Oregon law and, on that basis, ordered the sheriff to issue a concealed handgun license to petitioner. The sheriff appeals.

We conclude that the trial court erred in relying on the expungement provision, ORS 166.291(2), to find petitioner eligible for a license, because the California laws under which petitioner obtained some relief from his conviction are not "equivalent" to Oregon's expungement law. We also reject petitioner's proffered alternative bases to affirm. Specifically, we reject his contention that, as a matter of statutory construction, he has "never been convicted of a felony" within the meaning of ORS 166.291(1)(g), given California's post-judgment process for treating the felony as a misdemeanor, and his related federal constitutional arguments. Accordingly, we reverse and remand for entry of a judgment affirming the sheriff's denial of petitioner's application.

## I. FACTS

In 2015, petitioner pleaded no contest to a felony in California state court. He was convicted and sentenced

---

[1] Some statutes cited in this opinion, particularly ORS 166.291 and ORS 137.225, have been amended during the pendency of this case. *See* Or Laws 2024, ch 70, § 55 (amending ORS 137.225); Or Laws 2022, ch 97, § 5 (amending ORS 166.291). Those amendments are immaterial to our analysis, so all statutory citations are to the current statutes, unless stated otherwise.

to probation the following year. In 2018, petitioner filed a motion in the same court, seeking reduction of his felony conviction to a misdemeanor conviction, as permitted by Cal Penal Code § 17(b); early termination of his probation, as permitted by Cal Penal Code § 1203.3; and a plea change and dismissal of the charge, as permitted by Cal Penal Code § 1203.4. The court granted the motion. It ordered that petitioner's conviction was "reduced to a misdemeanor for all purposes," withdrew petitioner's no-contest plea and entered a not-guilty plea, then dismissed the case.

In 2022, petitioner applied for a concealed handgun license in Washington County, Oregon, where he now resides. The eligibility requirements for a concealed handgun license are listed in ORS 166.291. If an applicant meets those requirements and pays the applicable fees, then the sheriff of the county where the applicant resides "shall issue" the license. ORS 166.291(1).

The Washington County Sheriff denied petitioner's application based on ORS 166.291(1)(g), which requires that the applicant "[h]as never been convicted of a felony." The sheriff determined that petitioner's 2016 felony conviction in California made him ineligible for a license, notwithstanding the relief that petitioner had obtained from the California court with respect to that conviction in 2018.

Petitioner sought judicial review. Petitioner first argued for eligibility under the subsection concerning expungement, ORS 166.291(2). He argued that his felony conviction had been expunged under the laws of the State of California and that those laws are similar enough to Oregon's expungement law, ORS 137.225, to be "equivalent" for purposes of ORS 166.291(2). In the alternative, petitioner argued that he had "never been convicted of a felony" within the meaning of ORS 166.291(1)(g), given the reduction of his felony conviction to a misdemeanor conviction in 2018.

The sheriff disagreed on both points. Pointing to differences between Cal Penal Code § 1203.4 and ORS 137.225, the sheriff argued that the relief that petitioner obtained in California in 2018 was not "equivalent" to expungement under Oregon law and that ORS 166.291(2) therefore did not

apply. As for ORS 166.291(1)(g), the sheriff argued that petitioner was lawfully convicted of a felony in 2016 and that the 2018 misdemeanor reduction did not change that fact.

After a hearing, the trial court ruled in petitioner's favor, based on the expungement provision in ORS 166.291(2). The court concluded that, although the California laws under which petitioner obtained relief were not "precisely equivalent" to Oregon's expungement law, they were "substantially equivalent." The court entered a judgment stating that petitioner meets the statutory criteria for a concealed handgun license and ordering the sheriff to issue the license.

## II.   STANDARD OF REVIEW

Because the sheriff denied the application based on petitioner not meeting the statutory criteria for a concealed handgun license, the trial court's task on judicial review was to reassess whether petitioner met the criteria. ORS 166.293(6) (providing, in relevant part, that a circuit court "judgment affirming or overturning the sheriff's decision shall be based on whether the petitioner meets the criteria that are used for issuance of a concealed handgun license"). Our task is the same. We find the facts *de novo*—although, in this case, the facts are undisputed. ORS 166.293(10); *Stanley v. Myers*, 276 Or App 321, 327-28, 369 P3d 75, *rev den*, 359 Or 525 (2016). To the extent that questions of statutory construction arise, "the intended meaning of a statute is a question of law." *DCBS v. Muliro*, 359 Or 736, 742, 380 P3d 270 (2016). We seek to ascertain the intent of the legislature by examining the disputed text in context, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

## III.   ANALYSIS

We begin with a brief overview of the statute at issue, ORS 166.291, to frame our discussion. We then address the expungement provision in ORS 166.291(2), on which the trial court relied to overturn the sheriff's decision. Because we disagree with the trial court on that point, we then turn to ORS 166.291(1)(g) and petitioner's constitutional arguments as potential alternative bases to affirm.

A.   *Overview of ORS 166.291*

In Oregon, applications for concealed handgun licenses are directed to the sheriff of the county in which the applicant resides. The sheriff "shall issue" a license to any applicant who meets the statutory criteria for a license and pays the applicable fees. ORS 166.291(1); *but see also* ORS 166.293(2) (authorizing denial of a license on dangerousness grounds, even if the person is otherwise qualified under ORS 166.291).

The statutory criteria for a license are laid out in ORS 166.291. There are qualifications regarding citizenship, age, residency, outstanding warrants, pretrial release, and firearm competence. ORS 166.291(1)(a) - (f). There are qualifications regarding stalking protective orders, military discharge, sex offender registration, and certain firearm orders. ORS 166.291(1)(m) - (p). Most pertinent here, there are qualifications regarding prior criminal convictions, prior juvenile adjudications, and prior civil commitments. ORS 166.291(1)(g) - (L). As to prior criminal convictions, the applicant must have "*never been convicted of a felony* or found guilty, except for insanity under ORS 161.295, of a felony." ORS 166.291(1)(g) (emphasis added). The applicant must have "not been convicted of a misdemeanor or found guilty, except for insanity under ORS 161.295, of a misdemeanor within the four years prior to the application \*\*\*." ORS 166.291(1)(h). And the applicant must have "not been convicted of an offense involving controlled substances or participated in a court-supervised drug diversion program," subject to two exceptions for one-time offenders. ORS 166.291(1)(L).

With respect to the requirement in ORS 166.291(1)(g) that the applicant "[h]as never been convicted of a felony," ORS 166.291(2) identifies circumstances in which an applicant "is not subject to" disqualification under that provision:

> "A person who has been granted relief under ORS 166.273, 166.274, or 166.293 or 18 USC 925(c) or has had the person's record expunged under the laws of this state or equivalent laws of other jurisdictions is not subject to the disabilities in subsection (1)(g) to (L) of this section."

The statutes cited in the first part of ORS 166.291(2)—*i.e.*, ORS 166.273, ORS 166.274, ORS 166.293, and 18 USC 925(c)—all set forth specific procedures to obtain relief from a firearms disability. For present purposes, however, the portion of ORS 166.291(2) directly at issue is the second part, regarding expunged records, on which the trial court relied to overturn the sheriff's decision in this case. We turn to discussing that provision.

B.   *Eligibility under ORS 166.291(2)*

 The trial court concluded that petitioner's prior felony conviction did not disqualify him from obtaining a concealed handgun license because petitioner had had his "record expunged under the laws of this state or *equivalent laws of other jurisdictions*." ORS 166.291(2) (emphasis added). In the trial court's view, the California laws under which petitioner obtained relief in 2018 were not "precisely equivalent" to Oregon's expungement law but were "substantially equivalent." The sheriff challenges that conclusion, while petitioner defends it. As explained below, we conclude that an "equivalent" expungement law for purposes of ORS 166.291(2) is one with the same essential features as the set-aside procedure in ORS 137.225, and we further conclude that the California laws under which petitioner obtained relief do not meet that standard, given the substantial limitations on the relief that they provide relative to Oregon law.

 The parties' dispute regarding ORS 166.291(2) raises three related questions: What did the legislature mean by "record expunged under the laws of this state"? What did the legislature mean by "equivalent" with respect to the laws of other jurisdictions? How does the properly construed statute apply to these facts?

 The first question—the meaning of "record expunged under the laws of this state"—is an easy one. Petitioner, the sheriff, the trial court, and we all agree that that language in ORS 166.291(2) refers to the set-aside procedure in ORS 137.225, under which an Oregon court may seal the record of a conviction and other official records in a criminal case. At the time that ORS 166.291(2) was enacted in 1989, ORS 137.225 was "popularly known" as Oregon's "expunction

statute." *State v. Green*, 29 Or App 337, 339, 563 P2d 756 (1977); *see also, e.g.*, *State v. Adams*, 57 Or App 725, 725, 646 P2d 37 (1982) (referring to ORS 137.225 as "Oregon's expunction statute"); *Springer v. State*, 50 Or App 5, 13, 621 P2d 1213, *rev den*, 290 Or 727 (1981) (describing "expunction remedies" under ORS 137.225). The legislature would have understood ORS 137.225 to provide for record expungement as that term is legally defined, *see Black's Law Dictionary* 582 (6th ed 1990) (defining "expungement of record" as the "[p]rocess by which record of criminal conviction is destroyed or sealed after expiration of time")—and we are unaware of any other Oregon expungement law that the legislature could have been referring to.[2]

We therefore understand "record expunged under the laws of this state" to mean record expunged under ORS 137.225. Under that statute, a person convicted of a qualifying offense[3] who "has fully complied with and performed the sentence of the court for the offense" may, after a certain amount of time has passed,[4] apply to the court where the conviction was entered "for entry of an order setting aside the conviction." ORS 137.225(1)(a). The court may hold a hearing on the motion and may require affidavits or other proof. ORS 137.225(3)(a). The court is to grant the motion

---

[2] We acknowledge that, in *dicta* in a footnote in *State v. Langan*, 301 Or 1, 4 n 3, 718 P2d 719 (1986), the Supreme Court described "expungement" as a "misnomer" that "should not be used" to describe ORS 137.225, because the statute "does not call for expunging anything from the record of conviction *but for sealing the record*." (Emphasis added.) It appears that the court may have inadvertently relied on the legal definition of "expunge," which focuses on the act of "physically destroying" information, rather than the legal definition of "expungement of record," which, as quoted in the text, includes the sealing of records. *See Black's* at 582 (defining "expunge" and "expungement of record"). Courts and commentators have continued to describe ORS 137.225 as an "expungement" statute.

[3] The convictions to which ORS 137.225(1)(a) applies are "[a] Class B felony, except for a violation of ORS 166.429 or any crime classified as a person felony as defined in the rules of the Oregon Criminal Justice Commission"; "[a]ny misdemeanor, Class C felony or felony punishable as a misdemeanor pursuant to ORS 161.705"; "[a]n offense constituting a violation under state law or local ordinance"; "[a]n offense committed before January 1, 1972, that, if committed after that date, would qualify for an order under this section"; and contempt-of-court findings. ORS 137.225(5).

[4] The minimum time period has changed over the years. Currently, it ranges from one to seven years, depending on the crime of conviction, with the time period running "from the date of conviction or the release of the person from imprisonment for the conviction sought to be set aside, whichever is later." ORS 137.225(1)(b)(A) - (D).

of an eligible person unless their circumstances and post-conviction behavior create a public-safety risk. *Id.*

If set aside is ordered, "the person for purposes of the law shall be deemed not to have been previously convicted, and the court shall issue an order sealing the record of conviction and other official records in the case, including the records of arrest, citation or charge." *Id.* In addition, "the conviction, arrest, citation, charge or other proceeding shall be deemed not to have occurred, and the person may answer accordingly any questions relating to its occurrence." ORS 137.225(4); *see Bahr v. Statesman Journal*, 51 Or App 177, 180, 624 P2d 664, *rev den*, 291 Or 118 (1981) (under ORS 137.225, persons convicted of certain crimes may be granted "the privilege to act, and answer, in the future as if their conviction had never occurred").

Once a conviction is set aside under ORS 137.225, it largely ceases to exist for practical purposes, with only a few limited exceptions. *See State v. Langan*, 301 Or 1, 4 n 3, 718 P2d 719 (1986) ("An order under the statute is not designed to 'rewrite history' and deny the occurrence of an event but to limit the purposes for which official records may be used to exhume that past event."). First, under ORS 137.225 (7)(c), a set-aside conviction may be considered in determining other set-aside motions. Second, under ORS 137.225(10), in any civil action in which truth is an element of a claim for relief or affirmative defense, the court may order disclosure of sealed records on a party's motion in the interest of justice. Third, under ORS 137.225(11)(a), the court may order the reopening and disclosure of sealed records to assist an investigation by the defendant or the prosecutor, but such an order has no other effect on the setting aside of the conviction.

Having concluded that "record expunged under the laws of this state" in ORS 166.291(2) refers to the set-aside procedure in ORS 137.225, and having described that procedure, we next consider what the legislature meant by "equivalent laws of other jurisdictions." ORS 166.291(2). In both legal and lay usage, "equivalent" means equal or alike. *See Webster's Third New Int'l Dictionary* 769 (unabridged ed 2002) ("equal in force or amount," "like in signification

or import," and "corresponding or virtually identical esp. in effect or function"); *Black's* at 541 ("Equal in value, force, measure, volume, power, and effect or having equal or corresponding import, meaning or significance; alike, identical.").

Of course, that raises the question, how alike must they be? Given the myriad approaches to expungement across different jurisdictions, we doubt that the legislature meant to refer only to laws that are substantively *identical* to Oregon's. It is more likely that it meant to refer to laws with the same essential features as Oregon's expungement law, so we proceed with that understanding. *See State v. Carlton*, 361 Or 29, 37, 41, 388 P3d 1093 (2017) (examining statutes containing the phrase "or the equivalent laws of another jurisdiction" and concluding that "equivalent" is "yet another synonym of the more restrictive primary meaning of comparable"—*i.e.*, "a degree of similarity that makes comparison appropriate based on the commonality of salient features of the things being compared (meaning that they are alike in substance or essentials)" (internal quotation marks omitted)).

As previously described, under the set-aside procedure in ORS 137.225, the court issues "an order sealing the record of conviction and other official records in the case, including the records of arrest, citation or charge," and the person "for purposes of the law shall be deemed not to have been previously convicted," subject only to very limited exceptions. Thus, the essential features of record expungement under Oregon law are that the record of conviction and related official records in the case are sealed and unavailable to the public, the conviction is no longer considered part of the person's criminal history, it no longer affects the person's legal rights or disabilities, and the person is privileged to represent that they have never been convicted of the offense.

With that understanding of "record expunged under the laws of this state" and "equivalent laws of other jurisdictions," we turn to applying ORS 166.291(2) to the facts of this case. We must determine whether the relief that petitioner obtained under California law—reduction of his felony conviction to a misdemeanor conviction under Cal Penal Code § 17(b) and Cal Penal Code § 1203.3, followed by a change

of plea and dismissal under Cal Penal Code § 1203.4—is "equivalent" to record expungement under ORS 137.225.

Because reduction of petitioner's conviction to a misdemeanor under Cal Penal Code § 1203.3 cannot on its own be viewed as any kind of expungement, we begin with Cal Penal Code § 1203.4. As relevant here, section 1203.4 applies to a person who has been convicted of an offense (felony or misdemeanor) and sentenced to probation. It provides that "[t]he defendant shall, at any time after the termination of the period of probation, if they are not then serving a sentence for an offense, on probation for an offense, or charged with the commission of an offense, be permitted by the court to withdraw their plea of guilty or plea of nolo contendere and enter a plea of not guilty." Cal Penal Code § 1203.4(a)(1). The court shall "thereupon dismiss the accusations or information against the defendant." *Id*. *"[E]xcept as noted below*, the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which they have been convicted, except as provided in Section 13555 of the Vehicle Code." *Id.* (emphasis added).

The "except as noted below" limitation in section 1203.4 turns out to be a very meaningful one. Section 1203.4 imposes "numerous and substantial" limitations on the relief provided. *People v. Frawley*, 82 Cal App 4th 784, 791, 98 Cal Rptr 2d 555 (2000). Those limitations include:

- "[I]n any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." Cal Penal Code § 1203.4(a)(1).

- The conviction must be disclosed on questionnaires or applications for public office, state or local licensure, or lottery contracts. Cal Penal Code § 1203.4(a)(1) (requiring the order to state and the person to be informed "that the order does not relieve them of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission").

- The conviction still exists for purposes of disqualification from holding public office. Cal Penal Code § 1203.4(a)(3).

- The person still must comply with any criminal protective order that was issued in conjunction with the conviction, until it expires or is terminated by order. Cal Penal Code § 1203.4(a)(4).

- "Dismissal of an accusation or information pursuant to [section 1203.4] does not permit a person to own, possess, or have custody or control of a firearm or to prevent conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6." Cal Penal Code § 1203.4(a)(2).

As described by the California Supreme Court, "[the California] courts have drawn a distinction between penalties imposed on a felon as further punishment for the crime, as to which vacation under [section] 1203.4 generally affords relief, and nonpenal restrictions adopted for protection of public safety and welfare." *People v. Vasquez*, 25 Cal 4th 1225, 1230, 25 P3d 1090, 1093 (2001).

Those significant limitations on the relief provided by section 1203.4 lead us to conclude that section 1203.4 is not "equivalent" to record expungement under Oregon law, because it lacks some of the essential features of ORS 137.225. That the conviction continues to exist for criminal-history purposes in subsequent prosecutions is particularly significant. As the *Frawley* court observed, that "sweeping limitation on the relief" provided by section 1203.4 "alone precludes any notion that the term 'expungement' accurately describes the relief allowed by the statute." 82 Cal App 4th at 791-92; *see also State v. Leslie*, 134 Or App 366, 371, 895 P2d 342, *rev den*, 321 Or 397 (1995) ("[The] defendant's 1975 conviction was not expunged under the California statute. Section 1203.4(a) allows a conviction to be alleged and proved in the prosecution of any subsequent offense. That was done in this sentencing proceeding. The effect of proving that the conviction existed is to negate the dismissal under Section 1203.4.").

The other limitations on relief in section 1203.4—that the record of conviction is not sealed and therefore remains available to the public, that the conviction must be disclosed when applying for public office or for state or

local licensure, and that there is no relief from protective orders or firearms disabilities—further distance section 1203.4 from equivalence to Oregon's expungement statute. In short, whereas a person who obtains relief under ORS 137.225 occupies a position that is very nearly the same as someone who was never convicted, a person who obtains relief under Cal Penal Code § 1203.4 is still treated as a person with a conviction for many significant purposes.

We therefore conclude that Cal Penal Code § 1203.4 is not "equivalent" to Oregon's expungement law for purposes of ORS 166.291(2). That conclusion does not change with the added consideration of Cal Penal Code § 1203.3. Although petitioner was not required to obtain relief under section 1203.3 in order to obtain relief under section 1203.4, he chose to obtain relief under both statutes, and he argues that the resulting combination of relief is equivalent to the relief granted under ORS 137.225. We disagree. The limitations on relief under section 1203.4 that have led us to conclude that it is not equivalent to Oregon's expungement law—listed and discussed above—apply equally to misdemeanors. The fact that using both procedures together may have relieved petitioner of one of the disabilities that otherwise continue to apply after obtaining relief under section 1203.4—that is, the disability in Cal Penal Code § 1203.4(a)(2)—does not change our overall conclusion that the significant limitations on relief provided under California law means that it is not equivalent to Oregon's expungement law.

Accordingly, the trial court erred in overturning the sheriff's decision based on ORS 166.291(2). Because petitioner's record has not been "expunged under the laws of this state or equivalent laws of other jurisdictions," ORS 166.291(2), petitioner remains subject to the disabilities in ORS 166.291(1)(g) to (L), which we address next.

C.  *Eligibility under ORS 166.291(1)(g)*

Our conclusion that ORS 166.291(2) does not apply to petitioner in this case is not the end of the analysis, because petitioner made an alternative argument in the trial court that he presents again on appeal: that the reduction of his felony conviction to a misdemeanor, in and of itself, means

that he "has never been convicted of a felony" for purposes of ORS 166.291(1)(g). The sheriff disagreed below and continues to disagree. As we read the record, the trial court never reached that issue.[5] It is one, however, that may properly be decided for the first time on appeal. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022) (explaining when we will decide an issue that was raised but not decided in the trial court).

The sheriff argues, straightforwardly, that never means never. He notes that the legislature knows how to impose less stringent requirements when it wants to, as demonstrated by its limiting disqualification based on misdemeanor convictions and juvenile adjudications to four years. *See* ORS 166.291(1)(h), (k). Petitioner disagrees. He argues that the legislature meant "never" to signal only that there is no time limit for felony convictions, in contrast to the four-year limit on misdemeanor convictions and juvenile adjudications. In petitioner's view, ORS 166.291(1)(g) refers only to felony convictions in effect at the time of application, *i.e.*, that have not been "reversed, vacated, or otherwise nullified." Thus, in his view, an applicant whose only conviction of record at the time of application is a misdemeanor should be understood to have "never been convicted of a felony" for purposes of ORS 166.291(1)(g), even if the misdemeanor conviction started as a felony conviction and was reduced through a legal procedure.

We begin our analysis with the text and context, which are the best indications of the legislature's intent. *State v. Walker*, 356 Or 4, 13, 333 P3d 316 (2014); *Gaines*, 346 Or at 171 ("The first step remains an examination of text and context."). The parties focus on the meaning of "never," which is a word of common usage. "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The ordinary meaning of "never" as used here is "not ever : not at any time : at no time." *Webster's* at 1522. That ordinary meaning supports

---

[5] The sheriff asserts in his opening brief that the trial court wrongly agreed with petitioner's construction of ORS 166.291(1)(g). Although the scope of the trial court's ruling is not entirely clear from the record, we understand it to have decided the case under ORS 166.291(2), without reaching the arguments under ORS 166.291(1)(g).

the sheriff's position that being convicted of a felony at any time is disqualifying under the statute, regardless of any subsequent reduction by a court.

But it is not quite that simple, because of what follows "never." The phrase "been convicted of a felony" uses terms that are ubiquitous in the criminal context but are also varied in meaning. We have observed that "[t]he word 'conviction' is often vexing, precisely because it has a number of potential meanings." *State v. Rodarte*, 178 Or App 173, 178, 35 P3d 1116 (2001); *see also State v. Dintelman*, 112 Or App 350, 352-53, 829 P2d 719 (1992) (explaining that the word "'[c]onvicted' has a number of meanings, depending on the circumstances of the inquiry and what legally follows from a conviction[,]" and concluding that, "for the purposes of ORS 166.270, convicted of a felony means not only a determination of guilt but also entry of a judgment of conviction"); *Black's* at 333-34 (defining the word "convicted" in relation to the word "conviction," which can refer either to (1) "the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged" or (2) the "final judgment on a verdict of guilty," not including "a final judgment which has been expunged by pardon, reversed, set aside, or otherwise rendered nugatory").

The meaning of "felony" is similarly fluid. Both in plain meaning and as a legal term, it typically refers to a crime of a more serious nature, relative to those designated as misdemeanors. *See Black's* at 617 (defining "felony" as "[a] crime of a graver or more serious nature than those designated as misdemeanors"); *Webster's* at 836 (providing multiple definitions of "felony" that generally depend on that designation of seriousness). But how a crime is designated varies. In Oregon, whether a crime is designated as a felony or a misdemeanor may be determined by the legislative classification of the offense or its potential penalty,[6] by the actual punishment

---

[6] *See* ORS 161.525 ("Except as provided in ORS 161.585, 161.705 and 161.710, a crime is a felony if it is so designated in any statute of this state or if a person convicted under a statute of this state may be sentenced to a maximum term of imprisonment of more than one year."); ORS 161.545 ("A crime is a misdemeanor if it is so designated in any statute of this state or if a person convicted thereof may be sentenced to a maximum term of imprisonment of not more than one year.").

imposed,[7] by how the district attorney elects to treat it,[8] or by how the conviction is reduced to judgment.[9] And, of course, other jurisdictions have their own ways of designating felonies. *See Ex Parte Biggs*, 52 Or 433, 435, 97 P 713 (1908) ("It is a matter of statutory provision, and what may be a felony in one jurisdiction may be a misdemeanor in another, and vice versa, and in some jurisdictions crimes may not be classified at all.").

Given those various potential meanings, the legislature has at times expressly articulated what counts as being "convicted of a felony" for a particular statute, and, in fact, it did so in the bill that enacted ORS 166.291. The problem, as we will explain, is that the legislature defined the phrase in just one section of the bill, for purposes of *that section*—and not the one that ultimately became ORS 166.291.

ORS 166.291 was enacted in 1989 as part of a comprehensive gun control bill, House Bill (HB) 3470, following a mass shooting at a California school that had been carried out by someone who purchased the gun in Oregon. *See State v. Burris*, 370 Or 339, 356, 518 P3d 891 (2022) (describing the history of the legislation). The bill was a compromise that, on the one hand, increased restrictions on firearms sales and possession—particularly as to people who might pose a threat to the public—but, on the other hand, facilitated the issuance of concealed handgun licenses and created avenues for relief from disabilities that would preclude the possession of firearms. *Id*. at 356-57. One of the key components

---

[7] *See* ORS 161.585(1) ("When a crime punishable as a felony is also punishable by imprisonment for a maximum term of one year or by a fine, the crime shall be classed as a misdemeanor if the court imposes a punishment other than imprisonment under ORS 137.124(1)."); ORS 161.585(2) (setting out the timing for treating a conviction under subsection (1) as "a felony for all purposes until one of the following events occurs, after which occurrence the crime is a misdemeanor for all purposes").

[8] *See, e.g.*, ORS 161.570(4) ("If a Class C felony or a violation of ORS 475.752(7)(b), 475.854(2)(c) or 475.874(2)(c) is treated as a Class A misdemeanor under this section, the court shall clearly denominate the offense as a Class A misdemeanor in any judgment entered in the matter.").

[9] *See, e.g.*, ORS 161.705 (providing for reduction of Class C felonies to misdemeanors at the time of conviction or after completion of probation); ORS 166.270(3) (discussed later in this opinion); *Dintelman*, 112 Or App at 353 (a person is "convicted of a felony" for purposes of ORS 166.270 upon a determination of guilt and entry of the judgment of conviction).

of that compromise was the expansion of the firearms disabilities that resulted from a previous felony conviction.

Before 1989, the primary restriction on persons convicted of a felony from possessing firearms was the crime of "exconvict in possession of a firearm," ORS 166.270 (1987), and it applied only to a subset of firearms. The statute made it a Class C felony for "[a]ny person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States" to have a concealable firearm or a machine gun, meaning that felons could possess other guns, like hunting rifles.[10] The statute also included a provision that effectively restored the lost firearms privileges 15 years after the person was discharged from imprisonment, parole, or probation resulting from the conviction, provided that the person had only one prior felony, not involving a firearm or switchblade. ORS 166.270(4) (1987); *see Burris*, 370 Or at 355-56 (describing that provision).

The "exconvict in possession" statute included a two-part definition of the phrase "has been convicted of a felony." The first sentence provided a general definition, and the second sentence created carve-outs from that definition:

"For the purposes of this section, a person 'has been convicted of a felony' if, at the time of conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed. Provided, however, that such conviction shall not be deemed a conviction of a felony if:

"(a) At the time of conviction, and pursuant to the law of the jurisdiction in which the offense occurred, the offense was made a misdemeanor by the type or manner of sentence actually imposed; or

"(b) The offense was for possession of marijuana."

ORS 166.270(3) (1987).

House Bill 3470 expanded the "exconvict in possession" statute, relabeling it "felon in possession"; it also inserted criminal history considerations into other firearms statutes in a more prominent and wide-ranging way. ORS

---

[10] The statute also made it a misdemeanor for such persons to possess certain restricted nonfirearm weapons, such as switchblades. ORS 166.270(2) (1987).

166.270 became a prohibition on possession of *any* firearms by a person who had been convicted of a felony. Or Laws 1989, ch 839, § 4. And the legislature modified the statutory definition of "has been convicted of a felony." The first sentence of the definition continued to provide, "For the purposes of this section, a person 'has been convicted of a felony' if, at the time of conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed." Or Laws 1989, ch 839, § 4. However, the remainder of the definition was amended to exclude only convictions where "[t]he court declared the conviction to be a misdemeanor at the time of judgment" and convictions for marijuana possession that were prior to January 1, 1972. Or Laws 1989, ch 839, § 4.

Meanwhile, the phrase "has been convicted of a felony," which had previously appeared only in ORS 166.270, was added to other statutes to create new prohibitions. It was added to ORS 166.250, making it a misdemeanor (in addition to being a felony under ORS 166.270) for a person who "has been convicted of a felony" to possess a firearm. It was added to ORS 166.470, limiting the sale of firearms to a person who "has been convicted of a felony." And its converse, "has never been convicted of a felony," was included as a requirement for a concealed handgun license in ORS 166.291, which replaced ORS 166.290 and established the basic contours of the concealed handgun licensing scheme that we have today. *See* Or Laws 1989, ch 839, §§ 3, 4, 8, and 13; *see also generally State v. Vinge*, 337 Or App 621, \_\_\_ P3d \_\_\_ (2025) (describing Oregon's "shall issue" concealed handgun licensing scheme).

Curiously, though, the only definition of the phrase "has been convicted of a felony" that appeared in HB 3470 was in the amendments to the felon-in-possession statute, ORS 166.270. None of the other amended or newly enacted statutes included their own definitions or cross-referenced the ORS 166.270 definition.

What, then, are we to make of the fact that the legislature defined the phrase "has been convicted of a felony" for purposes of ORS 166.270 but not for purposes of the closely related statutes, including ORS 166.291, that

use that same phrase? Was it simply an oversight in a large bill, or was it an intentional drafting choice? Our general assumptions about legislative intent are in some tension in this circumstance. We generally presume that the legislature uses terms consistently throughout related statutes—and ORS 166.291, ORS 166.250, and ORS 166.470 are all closely related to ORS 166.270. However, we also ordinarily assume that an omission of this type—whereby the legislature includes something in one statute but not another, particularly as part of the same bill—is an intentional drafting choice. *See, e.g., State v. Bailey*, 346 Or 551, 562, 213 P3d 1240 (2009) ("[W]hen the legislature includes an express provision in one statute and omits the provision from another related statute, we assume that the omission was deliberate.").

Nothing in the text of the 1989 enactment itself solves that mystery, nor are we aware of any legislative history that directly explains the disconnect. However, based on the few clues that we do have, we conclude that the legislature generally intended "been convicted of a felony" to refer to the time of conviction and would have expected that general definition from ORS 166.270(3) to carry over to other provisions of the same bill, but that the legislature did not intend the specific exceptions in ORS 166.270(3), for pre-1972 marijuana convictions and post-judgment reductions of felonies to misdemeanors, to carry over to other statutes, or at least to ORS 166.291(1)(g).

The first clue to the legislative intent is the structure of the definition of "has been convicted of a felony" in ORS 166.270(3) as amended in 1989. As noted earlier, that provision first sets out a broad definition of when a person "has been convicted of a felony," which focuses on "the time of conviction of the offense" and whether it "was a felony under the law of the jurisdiction in which it was committed." Or Laws 1989, ch 839, § 4. It then provides carve-outs—things that would not be "deemed" felony convictions—including where the court "declared the conviction to be a misdemeanor at the time of judgment." Or Laws 1989, ch 839, § 4. As the Supreme Court observed in *State v. Stark*, 354 Or 1, 7, 307 P3d 418 (2013), "the legislature's use of entirely different

time references in those provisions may indicate that the legislature did *not* equate 'the time of conviction' with 'the time of judgment.'" (Emphasis in original.) That two-part structure, using two different timing provisions, suggests that the drafters of HB 3470 were operating with the understanding that whether a person "has been convicted of a felony" generally would be based on the time of the conviction *unless expressly excepted from that rule*.

It seems most likely, in the absence of any indication to the contrary, that the drafters of HB 3470 had in mind that same general meaning of "been convicted of a felony" described in the first sentence of ORS 166.270 when it used that phrase in other related statutes like ORS 166.291. That is, the legislature likely would have understood the inquiry to focus on the time of the conviction, unless otherwise specified. *Cf. Stark*, 354 Or at 10 (concluding that "if the 1989 legislative assembly had intended to make only the original felony judgment, and not the subsequent misdemeanor judgment, relevant to a determination of a person's status as a felon for purposes of that statute, it would have signaled that intent instead of using the more general term 'judgment'").

The second clue is that the drafters of HB 3470 understood the crime of felon-in-possession, and presumably the specific exceptions in the definition of ORS 166.270(3)(a) and (b), to present distinct policy choices from other related firearms statutes that were amended or enacted as part of the bill. As the Supreme Court observed in *Burris*, the new prohibitions on possession of firearms in ORS 166.250 (1989), and the prohibitions on transferring firearms in ORS 166.470 (1989), were intended to be "broader than the prohibitions on possession in ORS 166.270." 370 Or at 360. For example, the bill's drafters were careful to point out the different implications of restricting firearms sales and concealed handgun licenses, on the one hand, and imposing felony criminal liability and punishment on the other. *See* Tape Recording, Senate Committee on Judiciary, HB 3470, June 30, 1989, Tape 259, Side A (statements by staff legislative counsel Morris pointing out the meaningful difference between a person's ability to obtain a firearm, which might

be limited by federal law, and the potential for the imposition of a criminal punishment and making someone a felon under state law). Given those different policy considerations, and the fact that *all* of the discussions about the exceptions in ORS 166.270(3)(a) and (b) took place within the context of that statute only, we view the lack of any express exceptions in ORS 166.291 as significant. Although the legislature might rely, without an express definition, on a common understanding of what it means to be "convicted of a felony," we would expect the drafters to explicitly address any technical and carefully crafted exceptions that were intended to narrow that meaning for purposes of issuance of a concealed handgun license, given the different potential policy considerations in play.

A third clue—the drafters' overall reluctance to further distinguish among types of felonies, or even the types of misdemeanors, that would disqualify someone from possessing firearms, in light of the newly available judicial process for obtaining relief from the disability—reinforces our conclusion in that regard. When presented with suggestions to parse disqualifying offenses, the drafters fell back on a different part of the compromise bill: the new process that would allow persons to obtain relief from a firearms disability. As described earlier, the compromise in 1989 included provisions that made it easier to obtain a concealed handgun license, and it also included what is now the process for obtaining judicial relief from a firearms disability under ORS 166.274. *See* Tape Recording, House Committee on Judiciary, Natural Resources Subcommittee, HB 3470, Apr 26, 1989, Tape 14, Side A (statement by subcommittee chair, Rep Ernie Calhoon, referring to the "big perk" of the bill being the new appeals process whereby a judge can allow persons to obtain a concealed handgun permit).

Under ORS 166.274, a person otherwise barred from possessing a firearm under provisions of ORS 166.250, ORS 166.270, or ORS 166.470 can seek relief from that bar in the circuit court. If the petitioner demonstrates, by clear and convincing evidence, that the petitioner does not pose a threat to the safety of the public or the petitioner, relief shall be granted. ORS 166.274(7). And that relief carries through

the various firearms statutes, allowing even a person previously convicted of a felony to obtain a concealed handgun license and to purchase and possess firearms. *See, e.g.*, ORS 166.291(2) ("A person who has been granted relief under * * * ORS 166.274 * * * is not subject to the disabilities in subsection (1)(g) to (L) of this section.").

The availability of that new relief process was cited multiple times when legislators were discussing whether to cabin the types of convictions that would disqualify someone from possessing firearms or obtaining a concealed handgun license. For example, during a work session in a House subcommittee meeting, legislators and those involved in drafting the legislation discussed using the word "felon" rather than distinguishing between violent felonies and, for example, felony driving while suspended. Tape Recording, House Committee on Judiciary, Natural Resources Subcommittee, HB 3470, May 10, 1989, Tape 22, Side A. Representative Tom Brian responded that they should keep the current language, because previously convicted felons can make their case to possess firearms through the appeals process. *Id.* (statement of Rep Tom Brian). Later, during a work session on the bill in the Senate Committee on Judiciary, some legislators similarly expressed concerns about including past misdemeanors and nonviolent felonies as disqualifiers. A representative of House Speaker Vera Katz's Office, Kory MacGregor, who had been involved in drafting the legislation, explained that, practically speaking, it was not a lifetime bar because of the relief process; MacGregor explained that the solution that the drafters came up with was to treat all felonies as disqualifying and provide a process for obtaining relief. Tape Recording, Senate Committee on Judiciary, HB 3470, June 30, 1989, Tape 260, Side A (statement of Kory MacGregor, House Speaker's Office).

Although those discussions do not bear directly on when a person "has been convicted of a felony," they suggest to us that the legislature wanted the prohibition on obtaining a concealed handgun license to be broadly applicable to persons who had been previously convicted of felonies, with relief available through the express procedures for obtaining judicial relief from the disability (under state or federal law)

or through expungement under Oregon law or the equivalent law of another jurisdiction.[11]

For those reasons, we conclude that the legislature intended the phrase "been convicted of a felony" in ORS 166.291(1)(g) to refer to a conviction for an offense that was a felony under the law of the jurisdiction at the time of the offense, regardless of any subsequent post-judgment reduction to a misdemeanor. Combined with the plain meaning of "never," the eligibility criterion in ORS 166.291(1)(g) thus yields its most straightforward reading: It requires that a person has not ever been convicted for an offense that was a felony under the law of the jurisdiction at the time of the offense, even if the felony was later reduced to a misdemeanor through a post-judgment legal process.[12] We therefore reject petitioner's contention that, in light of the reduction of his felony to a misdemeanor under California law, he had never been convicted of a felony.

We recognize that, as a result of the inconsistent use of definitions throughout the firearms statutes and the patchwork of appellate decisions over the years interpreting aspects of those statutes, persons who have been convicted of felonies face a complex landscape—and sometimes inconsistent restrictions under different laws. *See, e.g.*, *Burris*,

---

[11] In *Stark*, 354 Or at 12, the Supreme Court rejected the state's argument that the relief provision had a bearing on the interpretation of ORS 166.270(3). It viewed the state's argument as the "tail wagging the dog" and stated that "[t]he legislature could have decided that a trial court's reduction of a felony conviction to a misdemeanor should remove that person from the prohibition on firearm possession at ORS 166.270 altogether, and at the same time reasonably could have provided a path for persons who *remain* felons for purposes of the statute to restore their prior right to possess firearms." *Id.* (emphasis in original). As explained in the text, we rely on the existence of the relief provision for a slightly different reason—as an indication of the legislature's reluctance to narrow the disability for persons convicted of felonies where, unlike ORS 166.270(3), the text itself does not include that type of exception.

[12] Our decision should not be interpreted to mean that a person remains a felon for purposes of ORS 166.291 even if the judgment of conviction is reversed or vacated on direct appeal or post-conviction. Although such a person would not be allowed to possess a firearm prior to the reversal or vacation of the judgment of conviction, *see Bailey v. Lampert*, 342 Or 321, 327, 153 P3d 95 (2007) (holding that the status of "felon" is determined as of the time of possession of the firearm, even if that status later might change), we have no reason to believe that the legislature intended a felony conviction that has been invalidated on direct appeal or post-conviction to affect a person's ability to obtain a concealed handgun license in the future.

370 Or at 361 ("We therefore conclude that the exception for certain older felony convictions in ORS 166.270(4)(a) does not apply to the prohibition on a felon possessing a firearm under ORS 166.250(1)(c)(C)."). This is our best effort at understanding the legislature's policy choice regarding who has "been convicted of a felony" for purposes of obtaining a concealed handgun license, but we acknowledge that the answer is not free from doubt. If the legislature intended a narrower (or more expansive) understanding of what it means to have "never been convicted of a felony" for purposes of obtaining a concealed handgun license, or it intended greater consistency within the scheme as a whole than currently exists, it is of course free to amend the statutes.

D.  *Petitioner's Constitutional Arguments*

In urging us to affirm the trial court's ruling, petitioner contends that denying him a concealed handgun license in these circumstances would give rise to two federal constitutional problems. First, he argues that it violates the Equal Protection Clause of the Fourteenth Amendment, in that treating him differently "because of the happenstance that his conviction was in California rather than Oregon" imposes a discriminatory burden on California residents who seek to move to Oregon. The trial court made a similar comment *sua sponte* below, to the effect that it was not prepared to find that petitioner would "have effectively a lifetime ban *** because he had the misfortune of being convicted under the criminal laws of *** another state."

We are not persuaded that Oregon's licensing scheme denies equal protection under the law—or, for that matter, that it creates a lifetime ban in this circumstance. Oregon has made a policy choice that its own expungement process or an equivalent expungement process will relieve a person of a firearms disability. It also has provided a fallback procedure that is available if another jurisdiction lacks a comparable expungement process, which is seeking relief from the firearms disability under ORS 166.274—an avenue of relief that is available to petitioner.

Second, petitioner argues that he has a constitutional right to a concealed-carry permit under the Second

Amendment, because the sheriff has not demonstrated that ORS 166.291 is consistent with historical American firearm regulation under *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 US 1, 142 S Ct 2111, 213 L Ed 2d 387 (2022). Petitioner did not raise or develop a Second Amendment argument below. However, even assuming that we could nonetheless consider it on this record as an alternative basis to affirm, we would reject it. Petitioner was convicted of a felony and, as we explained in *State v. Parras*, 326 Or App 246, 257-58, 531 P3d 711, *rev den*, 371 Or 511 (2023), *rev den*, 372 Or 763 (2024), "[t]he weight of historical evidence shows that it was understood that individuals could be divested of Second Amendment protections if they broke the social contract of being a virtuous citizen by committing a serious crime," and "[t]here is little historical evidence that any differentiation was made between those who committed serious violent versus non-violent offenses with respect to Second Amendment protections." Moreover, as we explained in *Vinge*, 337 Or App at 627, Oregon's concealed handgun licensing scheme is consistent with historical limitations on individuals carrying firearms.[13]

## IV.   CONCLUSION

We reverse the decision of the trial court and remand for entry of a judgment affirming the sheriff's denial of a concealed handgun license. The court was incorrect to rely on the expungement provision, ORS 166.291(2), to find petitioner eligible for a concealed handgun license, because the California laws under which petitioner obtained relief relating to his felony conviction are not "equivalent" to Oregon's expungement law, and we are unpersuaded by petitioner's proposed alternative bases to affirm for the reasons stated.

Reversed and remanded for entry of a judgment affirming the sheriff's denial of petitioner's application.

---

[13] Petitioner raises the constitutional issues both as standalone constitutional contentions and to argue for adoption of his construction of ORS 166.291 to avoid constitutional infirmity. *See Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 522, 238 P3d 395 (2010) ("When confronted with competing, reasonable constructions of a statute, and there is even a tenable argument that one of them would render the statute unconstitutional, we generally favor the other construction."). We are unpersuaded in both respects.